[No. 53229–0.   En Banc.   September 17, 1987.]

CRAIG R. DANIELSON, *Petitioner*, v. THE CITY
OF SEATTLE, ET AL, *Respondents*.

*Kennedy, Schuck, Harris & Miller, P.S.,* and *John P. Harris,* for petitioner.

*Douglas N. Jewett, City Attorney,* and *Rodney S. Eng, Assistant,* for respondents.

BRACHTENBACH, J.—Under the facts of this case, is a Seattle police officer entitled to a pretermination hearing where felony charges are filed against that officer for the incidents leading to his dismissal? The superior court answered yes. The Court of Appeals reversed. *Danielson v. Seattle,* 45 Wn. App. 235, 724 P.2d 1115 (1986). We affirm the Court of Appeals.

This case involves interpretation of the Seattle Police Department Manual and the Seattle Police Officers' Guild collective bargaining agreement, and application of federal due process. Petitioner also argues for reinstatement after his discharge from his probation sentence for his felony conviction.

On March 15, 1982, Seattle police officer Danielson, while on duty, obtained a bank card from an itinerant "street person", used the card to make four cash withdrawals, spent the money, and destroyed the card. On April 12, 1982, a bank official contacted the Police Department about certain withdrawals made with a bank card reported missing by a customer in 1981. The bank official gave the Department four photographs taken automatically during the withdrawals showing a uniformed Seattle police officer, Danielson, withdrawing money. The Department's Internal Investigations Section (IIS) began an investigation into the

incident.

On April 15, 1982, two IIS officers interviewed Danielson about the theft. The officers gave Danielson his *Miranda* warnings, explained the allegations they were investigating, and described the evidence supporting them. The officers also told Danielson that criminal charges might be filed. The officers then asked Danielson if he desired to make a statement regarding the allegations. In response, Danielson admitted withdrawing the money and described the circumstances of the incident. Danielson explained that he had been overextended financially because of high mortgage payments and child support obligations. Pending completion of the IIS investigation, the Department suspended Danielson for 30 days without pay.

On April 19, 1982, the Department forwarded Danielson's case to the King County prosecutor. The prosecutor agreed to file an "expedited felony charge" based on the bank card incident, with the understanding that Danielson would be allowed to plead guilty to reduced misdemeanor charges in Seattle District Court and receive a 1–year deferred sentence. The charge was filed April 28, 1982.

On May 7, 1982, the police chief dismissed Danielson for seven violations of provisions of the Seattle Police Department Manual, all occurring during the bank card incident. Danielson received notice of his dismissal by mail on May 12, 1982. That same day, Danielson was caught shoplifting. The shoplifting incident prompted the prosecutor to refile the original bank card charge as a felony in King County Superior Court. On June 10, 1982, Danielson pleaded guilty to the charge and received a 3–year deferred sentence with probation for second degree possession of stolen property.[1]

On June 11, 1982 the Department held a formal disciplinary hearing on Danielson's dismissal. At the hearing,

---

[1]At the end of his probation, the court allowed Danielson to withdraw his guilty plea and enter a not guilty plea. The court then dismissed the felony charge and ordered Danielson discharged from penalties and disabilities stemming from it.

Danielson argued that he had suffered from diminished capacity during the bank card incident. Two psychiatrists testified on Danielson's behalf. The hearing board rejected Danielson's defense and affirmed his dismissal. Danielson appealed to the Public Safety Civil Service Commission, which unanimously upheld his dismissal. Danielson challenged the Commission's ruling by writ of certiorari to the superior court. The superior court reversed the Commission's ruling, reasoning that Danielson should have been afforded a full evidentiary hearing prior to dismissal. The court awarded Danielson back pay and benefits, but refused to order his reinstatement.

Danielson appealed the court's refusal to reinstate him. Respondent City of Seattle cross–appealed the court's judgment that Danielson had been wrongfully dismissed. The Court of Appeals reversed the superior court, holding that Danielson was not entitled to a full evidentiary hearing prior to dismissal, and that the Department's procedures did not violate his due process rights. *See Danielson v. Seattle, supra* at 247. We granted discretionary review.

I

Initially, Danielson contends that the Seattle Police Department Manual and the Seattle Police Officers' Guild agreement (Guild Agreement) provide for pretermination hearings in cases involving officers charged with felonies. We disagree.

Pursuant to article 5, section 4 of the Seattle City Charter, the Police Department promulgated its "Manual of Rules and Procedures". The Manual, by its own provisions, is a "Department Policy and Procedure." Manual §§ 1.0–4.0. The Seattle Municipal Code defines a "policy and procedure" as describing internal department policies, procedures, responsibilities and instructions. Seattle Municipal Code (SMC) 3.96.010. Statements concerning an agency's internal management do not rise to the level of administrative rules. SMC 3.02.020(E)(4).

Pursuant to the Manual, when IIS concludes that com-

plaints against a police officer should be "sustained", the officer shall be notified and:

> *Except in those cases where felony charges will be requested,* the accused has 48 hours . . . in which to waive or exercise his right to a disciplinary hearing.

(Italics ours.) Manual § 1.09.040(4)(c)(3)(a). Here, the superior court, relying on *Punton v. Seattle Pub. Safety Comm'n,* 32 Wn. App. 959, 650 P.2d 1138 (1982), concluded that Danielson was entitled by the Manual to a pretermination hearing.

In *Punton,* the court concluded that the language in the Manual granting an accused officer 48 hours to exercise "his right to a disciplinary hearing" amounted to an express declaration that a right to a hearing exists. *Punton,* at 966. However, the officer involved in *Punton* had not been charged with any felony, and the court did not consider the Manual language "[e]xcept in those cases where felony charges will be requested, the accused has 48 hours . . . to waive or exercise his right to a disciplinary hearing." *See* Manual § 1.09.040(4)(c)(3)(a). Thus, *Punton* is not controlling here where felony charges were filed against Danielson for the incidents leading to his discipline.

█ Moreover, the Seattle police chief, charged with enforcement of the Manual, has interpreted it as not providing a right to a hearing prior to discipline where felony charges will be, or have been, filed. Clerk's Papers, at 360–62. This interpretation is consistent with the Department's and the drafters' interpretation of the Manual. Clerk's Papers, at 230–46, 360, 366. The construction placed on a provision by the agency promulgating it is entitled to great weight. *Yakima v. Yakima Police & Fire Civil Serv. Comm'n,* 29 Wn. App. 756, 765, 631 P.2d 400 (1981); *State Liquor Control Bd. v. State Personnel Bd.,* 88 Wn.2d 368, 379, 561 P.2d 195 (1977). We conclude that the Manual does not entitle an officer to a pretermination hearing where felony charges are to be filed against that officer. *See McConnell v. Seattle,* 44 Wn. App. 316, 325, 722 P.2d 121, *review denied,* 107 Wn.2d 1007 (1986).

On reconsideration, the superior court also interpreted the Guild Agreement to require pretermination hearings for officers discharged for felonies. The superior court felt constrained by the *Punton* decision. However, the *Punton* court relied solely on the Manual language to reach its conclusion that pretermination hearings were required. *See Punton,* at 965–66. The court did not consider the Guild Agreement, which gives the police chief the discretion to implement discipline immediately. See Guild Agreement, art. 3, § 1. We note that as a Seattle city ordinance, *see* ordinance 109570, the Guild Agreement language controls over the Manual, which is only a statement of internal departmental policy not having the force of an administrative rule. *See Green River Comm'ty College v. Higher Educ. Personnel Bd.,* 95 Wn.2d 108, 112, 622 P.2d 826 (1980), *modified. on other grounds,* 95 Wn.2d 962, 963, 633 P.2d 1324 (1981).

██ The Guild Agreement, a collective bargaining agreement between Seattle and the Seattle Police Officers' Guild, sets forth procedures for disciplinary hearings. See Agreement By and Between City of Seattle and Seattle Police Officers' Guild, app. A (1982). The Guild Agreement specifically states "that notwithstanding the hearing procedure enumerated in Appendix 'A,' it is understood that if deemed appropriate by the Chief of the Department discipline or discharge may be implemented immediately." Guild Agreement, art. 3, § 1, at 5. The Guild Agreement is governed by established principles of contract law. *See Hansen v. Seattle,* 45 Wn. App. 214, 221, 724 P.2d 371, *review denied,* 107 Wn.2d 1004 (1986); *Keeton v. Department of Social & Health Servs.,* 34 Wn. App. 353, 361, 661 P.2d 982 (1983). Where the intention of the parties is clear from a written contract, the courts have nothing to construe and the contract language controls. *Hansen,* at 221; *Grant Cy. Constructors v. E.V. Lane Corp.,* 77 Wn.2d 110, 121, 459 P.2d 947 (1969). The Court of Appeals has noted that the Guild Agreement does not require a pretermination hearing in every case. *See Hansen,* at 219–20.

The Court of Appeals here correctly noted that the lower court essentially rewrote the clear language of the Guild Agreement to allow for a pretermination hearing. *Danielson v. Seattle, supra* at 242. Looking to the express language of the Guild Agreement and construing the Manual in accord with the Department's interpretation, we conclude that the Court of Appeals properly found that the Manual and Guild Agreement involved here grant no pretermination hearing rights to officers disciplined for incidents where felony charges will be requested. *Danielson,* at 242–43. *See also Hansen,* at 221 (Seattle Police Officers' Guild Agreement does not provide for a pretermination hearing).

## II

Danielson next contends that the Department's failure to provide him a pretermination hearing violated his federal due process rights.[2]

Danielson's due process claim to a pretermination hearing depends upon his having a property right in continued employment as a police officer. *See Cleveland Bd. of Educ. v. Loudermill,* 470 U.S. 532, 538, 84 L. Ed. 2d 494, 105 S. Ct. 1487 (1985); *Board of Regents v. Roth,* 408 U.S. 564, 576–78, 33 L. Ed. 2d 548, 92 S. Ct. 2701 (1972). While property interests are created and defined by existing rules or understandings that stem from independent sources such as state law, minimum procedural protections of those interests are matters of federal law. *Loudermill,* at 538, 541. "While the legislature may elect not to confer a property interest in [public] employment, it may not constitutionally authorize the deprivation of such an interest, once conferred, without appropriate procedural safeguards.'" *Loudermill,* at 541 (quoting *Arnett v. Kennedy,* 416 U.S. 134, 40 L. Ed. 2d 15, 94 S. Ct. 1633 (1974)).

In *Loudermill,* the Supreme Court held that an Ohio civil

---

[2]Although Danielson mentions the state due process clause in his petition for review, he presents no separate state argument or analysis. We therefore decline to address that issue. *See Transamerica Ins. Group v. United Pac. Ins. Co.,* 92 Wn.2d 21, 29, 593 P.2d 156 (1979).

service statute providing for continued employment and dismissal only for cause created a property right in continued employment protected by the due process clause of the federal constitution. *Loudermill,* at 538–39. Similarly, this court has recognized that a due process property interest may arise if "there are such rules or mutually explicit understandings that support [an individual's] claim of entitlement to the benefit and that he may invoke at a hearing.'" *Ritter v. Board of Comm'rs,* 96 Wn.2d 503, 509, 637 P.2d 940 (1981) (quoting *Perry v. Sindermann,* 408 U.S. 593, 601, 33 L. Ed. 2d 570, 92 S. Ct. 2694 (1972)). While public employment alone does not create constitutionally protected property interests, *see Yantsin v. Aberdeen,* 54 Wn.2d 787, 788, 345 P.2d 178 (1959); *Reynolds v. Kirkland Police Comm'n,* 62 Wn.2d 720, 724, 384 P.2d 819 (1963); *Olson v. UW,* 89 Wn.2d 558, 564, 573 P.2d 1308 (1978); *Giles v. Department of Social & Health Servs.,* 90 Wn.2d 457, 460–61, 583 P.2d 1213 (1978); *Williams v. Seattle Sch. Dist. 1,* 97 Wn.2d 215, 222, 643 P.2d 426 (1982), protected property interests can arise from express or implied contracts for continued employment, objective representations of tenure, *Ritter,* at 509, or even collective bargaining agreements providing for continued employment, *Washington Educ. Ass'n v. State,* 97 Wn.2d 899, 908, 652 P.2d 1347 (1982). Thus, constitutionally protected property interests may arise in public employment where civil service laws provide an express or implied "contract" for continued employment. *See Ritter,* at 509.

■ The Court of Appeals has found that civil service police officers dischargeable only for cause have protected property interests in continued employment. *Payne v. Mount,* 41 Wn. App. 627, 633, 705 P.2d 297, *review denied,* 104 Wn.2d 1022 (1985), *appeal dismissed,* 476 U.S. 1154 (1986); *Punton v. Seattle Pub. Safety Comm'n,* 32 Wn. App. 959, 964, 650 P.2d 1138 (1982); *Deering v. Seattle,* 10 Wn. App. 832, 835, 520 P.2d 638, *cert. denied,* 419 U.S. 1050 (1974); *see also Ticeson v. Department of Social & Health Servs.,* 19 Wn. App. 489, 494, 576 P.2d 78 (1978)

(employee's civil service status constitutionally protected property right); *Helland v. King Cy. Civil Serv. Comm'n,* 10 Wn. App. 683, 685 n.1, 519 P.2d 258 (1974) (civil servant has due process property right), *rev'd on other grounds,* 84 Wn.2d 858, 529 P.2d 1058 (1975); *cf. Jordan v. Oakville,* 106 Wn.2d 122, 131, 720 P.2d 824 (1986) (finding no protected property interest where police officer was terminable at will); *State ex rel. Swartout v. Civil Serv. Comm'n,* 25 Wn. App. 174, 178, 605 P.2d 796 (no property interest in continued employment as probationary police officer), *cert. denied,* 449 U.S. 992 (1980). Here, the Seattle Public Safety Civil Service ordinance provides that regular employees may only be "removed, suspended, demoted, or discharged for cause." SMC 4.08.100; *see also* SMC 4.08.140 ("[e]mployees shall not be demoted, suspended, or discharged except only for cause"); Seattle City Charter, art. 16, § 7 ("[n]o member of the civil service may be suspended or dismissed from employment except for justifiable cause"). Thus, Danielson had a legitimate claim of entitlement to continued employment until the Department had cause to discharge him. *See Ritter,* at 509; *Payne,* at 633; *Punton,* at 964; *Deering,* at 835. Having established that Danielson had a property interest in his continued employment, we next analyze what process constitutionally is due him. *See Loudermill,* at 541.[3]

▪ The "root" requirement of the due process clause is that a deprivation of property be preceded by notice and an opportunity for hearing appropriate to the nature of the case. *Loudermill,* at 542. "This principle requires 'some

---

[3]To the extent that the *Punton* opinion suggests that the Department's failure to follow its procedures gave rise to a prima facie deprivation of due process, it is overruled. *See Punton v. Seattle Pub. Safety Comm'n,* 32 Wn. App. 959, 967 n.6, 650 P.2d 1138 (1982). As the Court of Appeals below correctly observed, an agency's failure to follow its own rules does not per se violate procedural due process, but does so only when the agency's rules represent minimal due process requirements. *See Williams v. Seattle,* 607 F. Supp. 714, 719 (W.D. Wash. 1985) (criticizing *Punton;* employee has no substantive property interests in procedural rules alone); *McConnell v. Seattle, supra* at 325 (citing *Williams v. Seattle, supra*).

kind of a hearing' prior to the discharge of an employee who has a constitutionally protected property interest in his employment." *Loudermill,* at 542 (quoting *Board of Regents v. Roth, supra* at 569–70). A court must balance the competing interests at stake in determining the form of the pretermination hearing necessary for due process purposes. *Loudermill,* at 542–43.

In public employment cases the competing considerations are: (1) the employee's interests in retaining employment; (2) the government's interest in expeditious removal of unsatisfactory employees; and (3) the risk of erroneous termination. *Loudermill,* at 542–43. In public employee cases, the pretermination hearing need not definitively resolve the propriety of the discharge, but should serve as an initial check against mistaken decisions—to determine whether there are reasonable grounds to believe the charges against the employee are true and support the proposed action. *Loudermill,* at 545–46. "The tenured public employee is entitled to oral or written notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present his side of the story." *Loudermill,* at 546.

Here, Danielson has a significant interest in retaining employment and the Department has a similar interest in promptly discharging an officer who abuses his position. The determinative factor then is the risk of error inherent in the Department's discharge procedures. *See Danielson v. Seattle,* 45 Wn. App. 235, 245, 724 P.2d 1115 (1986). As noted by the Court of Appeals, informal conferences can satisfy the *Loudermill* requirements. *See Payne v. Mount, supra* at 634 n.10. Here, Danielson was interviewed by IIS officers on April 15, 1982. They notified Danielson of the nature of the charges against him, explained the evidence which supported those charges, and allowed Danielson to explain his actions. We agree with the Court of Appeals that this interview satisfied Danielson's pretermination due process rights. The interview served as an initial check against mistake, and gave Danielson notice and opportunity to respond.

We also note that the Seattle Civil Service ordinance provides for posttermination evidentiary hearings. SMC 4.08.100. Here, the Department provided Danielson a full hearing 5 weeks after his discharge. Danielson presented witnesses and was represented by an attorney. Together, the IIS interview and the full posttermination hearing provided an adequate safeguard against the Department's erroneous termination of Danielson's interest in continued employment without intruding to an unwarranted extent on the Department's interest in quickly removing him from his position as a police officer. *See Loudermill,* at 546. Danielson's due process rights were satisfied. *See Loudermill,* at 547–48 ("all the process that is due is provided by a pretermination opportunity to respond, coupled with post–termination administrative procedures as provided"); *Williams v. Seattle,* 607 F. Supp. 714 (W.D. Wash. 1985) (IIS investigation by the Seattle Police Department satisfied pretermination due process requirements). The Court of Appeals properly reversed the lower court's award of back pay and benefits.

## III

Danielson also argues that he is entitled to reinstatement as of January 27, 1984, when his 3–year probationary period ended and the trial court ordered that he be "discharged from penalties and disabilities" resulting from his original felony charges. See Clerk's Papers, at 73. Danielson contends that because he has cleared his record of the felony charges, the Department no longer has good cause not to rehire him.

Danielson's argument mischaracterizes the Department's actions. The Department dismissed Danielson for violations of the police manual arising from the felony incident, not the felony itself. *See Danielson,* at 247. A hearing board upheld the Department's actions after an evidentiary hearing. The Commission affirmed. The fact that Danielson's record has been cleared of the felony charges does not change the Commission's conclusion that the Department

had cause to discharge him. Danielson does not dispute that the Department had cause to discharge him. The question whether to *rehire* Danielson has not been decided by the Commission. This court will not anticipate nor substitute its judgment for the independent judgment of the Commission having the authority to reinstate him. *See* SMC 4.08.070(A); *Vancouver v. Jarvis,* 76 Wn.2d 110, 114, 455 P.2d 591 (1969).

The decision of the Court of Appeals is affirmed.

PEARSON, C.J., DOLLIVER, DORE, ANDERSEN, CALLOW, GOODLOE, and DURHAM, JJ., and BEVER, J. Pro Tem., concur.