[No. 18797-0-I.  Division One.  January 13, 1988.]

N. J. GIBSON, JR., *Appellant,* v. THE CITY OF AUBURN, ET AL, *Respondents.*

*Judith A. Lonnquist, Robert C. Van Siclen,* and *Smythe, Van Siclen & Sosa,* for appellant.

*Lawrence B. Hannah* and *Perkins Coie,* for respondents.

REVELLE, J.*—N. J. Gibson, Jr., appeals from a judgment affirming his dismissal as police chief of the City of Auburn. Gibson became chief of the Auburn Police Department in October 1979. By the spring of 1984, respondent Bob Roegner, Auburn's Mayor, had become seriously dissatisfied with Gibson's performance. In May 1984, the two men met on at least four occasions to discuss what Roegner perceived as Gibson's shortcomings.

In June, Mayor Roegner, the city attorney, Gibson, and Gibson's attorney attempted to negotiate an agreement whereby Gibson would resign. These negotiations were unsuccessful. On July 2, Mayor Roegner informed Gibson by letter that he was dismissed as of that day. The letter outlined the reasons for Gibson's dismissal and cited Auburn Civil Service Rule 16.01 as the basis for the Mayor's action.

Gibson appealed his dismissal to the Auburn Civil Service Commission pursuant to RCW 41.12.090. At the time his appeal was filed, the Commission consisted of three members, as provided by statute and city ordinance. However, one member subsequently resigned, and Gibson's appeal was heard by the remaining two members before a replacement was appointed. Gibson's request for a hearing officer was denied.

After reviewing the evidence presented at the hearing, the Commission affirmed Gibson's dismissal, finding that Mayor Roegner had acted in good faith for cause and that his action was not taken for political reasons. Gibson thereafter appealed to the Superior Court, which affirmed the Commission's decision.

Gibson presents the following six issues for our review: (1) Did the City fail to provide an adequate pretermination hearing? (2) Is the language of Auburn Civil Service Rule 16.01 unconstitutionally vague? (3) Did the City violate

---

*Judge George H. Revelle is serving as a judge pro tempore of the Court of Appeals pursuant to RCW 2.06.150.

Auburn City Ordinance 2910 by conducting the hearing before a 2–member Commission? (4) Was the Commission's denial of Gibson's request for a hearing officer arbitrary and capricious? (5) Did Commissioner Kammeyer's participation in the hearing violate the appearance of fairness doctrine? and (6) Is there sufficient evidence to support the trial court's conclusion that the Commission's decision was made in good faith for cause?

## PRETERMINATION HEARING

Gibson first contends that the City violated his right to due process of law by failing to provide an adequate pretermination hearing. The "root requirement" of the due process clause of the Fourteenth Amendment is "'that an individual be given an opportunity for a hearing *before* he is deprived of any significant property interest.'" *Cleveland Bd. of Educ. v. Loudermill,* 470 U.S. 532, 542, 84 L. Ed. 2d 494, 105 S. Ct. 1487 (1985) (quoting *Boddie v. Connecticut,* 401 U.S. 371, 379, 28 L. Ed. 2d 113, 91 S. Ct. 780 (1971)). Thus, in *Loudermill,* at 542, the Court held that due process requires "some kind of a hearing" prior to the discharge of an employee who has a constitutionally protected property interest in his employment.[1]

Gibson argues, first, that *Loudermill* contemplates a hearing prior to the decision to discharge, rather than the discharge itself. However, there is no support for this position in the language of the opinion itself; *Loudermill,* at 542–43, speaks of the right to a hearing "prior to . . . discharge" and "before . . . termination." Furthermore, Gibson's approach would be unworkable because it would involve the court in impossible speculation as to the decision maker's state of mind at the time of the hearing.

---

[1]We are unpersuaded by Gibson's argument that article 1, section 3 of the Washington Constitution requires more in this respect than the due process clause of the Fourteenth Amendment, which contains substantially the same language. Consequently, in what follows we will analyze Gibson's due process claim under the Fourteenth Amendment.

■ Next, Gibson argues that the procedures afforded him before termination were inadequate. However, a pretermination "hearing" need not be elaborate in order to satisfy the requirements of due process. *Loudermill,* at 545. In general, something less than a full evidentiary hearing is sufficient. *Loudermill,* at 545. The tenured public employee is entitled to oral or written notice of the "charges" against him, an explanation of the employer's evidence, and an opportunity to present his side of the story. *Loudermill,* at 546. The pretermination hearing should serve as an initial check against mistaken decisions, but it need not definitively resolve the propriety of the discharge. *Loudermill,* at 545.

The Supreme Court of Washington has recently held that the requirements of *Loudermill* can be satisfied by an informal conference. *Danielson v. Seattle,* 108 Wn.2d 788, 798, 742 P.2d 717 (1987). In *Danielson,* a police officer was interviewed prior to his discharge by officers from the Seattle Police Department's Internal Investigation Section. The investigating officers informed him of the nature of the charges against him and the evidence in support of those charges, and allowed him to explain his actions. *Danielson,* at 791, 798. The Supreme Court held that this interview satisfied the discharged officer's pretermination due process rights. *Danielson,* at 798.

In the case sub judice, the trial court found:

> During the six-week period prior to his discharge, petitioner retained legal counsel to represent him concerning his employment status and petitioner discussed his alleged performance deficiencies with Auburn Mayor Roegner. In June of 1984 petitioner's attorney, Mr. Van Siclen, met with Mayor Roegner and Auburn's attorney, William Coats, to discuss the possibility of petitioner's discharge and the reasons for the discharge and to review written materials supporting such a decision. In June of 1984 both petitioner and his attorney were shown material later relied upon by the Mayor in discharging petitioner. Petitioner and his attorney thus received notice of the grounds for the proposed discharge of petitioner, an

explanation of Auburn's evidence against petitioner, and an opportunity for petitioner to be heard prior to his discharge.

Gibson has not assigned error to this finding; therefore it may be taken as true on appeal. *Silverdale Hotel Assocs. v. Lomas & Nettleton Co.,* 36 Wn. App. 762, 765–66, 677 P.2d 773, *review denied,* 101 Wn.2d 1021 (1984). It follows that, under the standard of *Loudermill* and *Danielson,* Gibson received the pretermination hearing to which he was entitled.

### ACSR 16.01 LANGUAGE

On July 2, 1984, Gibson received a letter from Mayor Roegner informing him of his dismissal. The letter stated that the Mayor's action was taken pursuant to Auburn Civil Service Rule (ACSR) 16.01, paragraphs (f) and (g), which provide, in pertinent part:[2]

> Any employee may be discharged or suspended without pay from the city service or demoted or deprived of vacation or other privileges for any of the following reasons:
>
> . . .
> (f) For . . . inefficiency, or inattention to . . . duty;
> (g) For . . . any other act of omission . . . tending to injure the public service . . . or any willful violation of the provisions of the applicable state laws or these rules. . . .

Gibson contends that this rule, primarily because of its use of the word "inefficiency," provides the employee with insufficient notice of the conduct expected of him and is therefore unconstitutionally vague.

■ Due process requires that a statute or rule give fair notice of what is prohibited or required. *State v. Reader's Digest Ass'n,* 81 Wn.2d 259, 273, 501 P.2d 290 (1972), *appeal dismissed,* 411 U.S. 945 (1973); *see also Blondheim v. State,* 84 Wn.2d 874, 878, 529 P.2d 1096 (1975). In determining whether a statute is impermissibly vague or indefinite, Washington courts have applied the so–called

---

[2]The language of ACSR 16.01 closely tracks that of RCW 41.12.080.

"common intelligence" test. *Chicago, M., St. P. & Pac. R.R. v. State Human Rights Comm'n,* 87 Wn.2d 802, 805, 557 P.2d 307 (1976). A statute violates due process if it forbids or requires the doing of an act in terms so vague that persons of common intelligence must necessarily guess at its meaning. *Reader's Digest Ass'n,* at 273. On the other hand, the vagueness test does not require a statute to meet impossible standards of specificity. *Chicago,* at 805; *Blondheim,* at 878. If, within the context of its use, the language of a statute gives fair warning of what is required, then it will satisfy the demands of due process. *Chicago,* at 805.

In *Arnett v. Kennedy,* 416 U.S. 134, 40 L. Ed. 2d 15, 94 S. Ct. 1633 (1974), the Supreme Court of the United States considered a challenge based on vagueness to a statute authorizing removal of federal employees "'for such cause as will promote the efficiency of the service". *Arnett,* at 158 (quoting 5 U.S.C. § 7501(a)). The Court observed, first, that "'[T]here are limitations in the English language with respect to being both specific and manageably brief". *Arnett,* at 159 (quoting *United States Civil Serv. Comm'n v. National Ass'n of Letter Carriers,* 413 U.S. 548, 578–79, 37 L. Ed. 2d 796, 93 S. Ct. 2880 (1973)). Furthermore, the Court noted that in drafting the statute, Congress had sought to provide a common standard of job protection for "myriad different federal employees performing widely disparate tasks". *Arnett,* at 159. "We do not believe", the Court said, "that Congress was confined to the choice of enacting a detailed code of employee conduct". *Arnett,* at 159. Accordingly, the Court held that the challenged statute was not impermissibly vague.[3] *Arnett,* at 163–64.

The same analysis applies with equal or greater force to ACSR 16.01. "Inefficiency," within the context of public employment, is a term which "the ordinary person exercising ordinary common sense can sufficiently understand". *Arnett,* at 159 (quoting *United States Civil Serv. Comm'n,*

---

[3]There is no majority opinion in *Arnett.* However, six Justices concurred in the plurality opinion with respect to the issue of vagueness.

at 579). Furthermore, greater specificity would not be practicable. It would not be feasible, and it should not be necessary, to spell out in detail all types of conduct which amount to "inefficiency." The ordinance as written provides fair notice of what is required.

## 2–MEMBER COMMISSION

RCW 41.12.030 and Auburn City Ordinance (ACO) 2910 provide for a Civil Service Commission composed of three members. After Gibson filed his appeal with the Commission, one of its three members resigned, and the appeal was heard by the remaining two members. Gibson contends that the proceedings therefore violated ACO 2910.[4]

However, our review of the record indicates the Gibson never raised this issue at the administrative hearing. On the contrary, the record shows that Gibson affirmatively indicated his willingness to proceed before a 2–person commission. Consequently, he is precluded from raising this issue on review.[5] *See Kitsap Cy. v. Department of Natural Resources,* 99 Wn.2d 386, 393, 662 P.2d 381 (1983).

## DENIAL OF HEARING OFFICER REQUEST

Gibson next contends that the Commission's denial of his request for a hearing officer was arbitrary and capricious. ACSR 5.04 provides:

---

[4]For reasons which are somewhat obscure, Gibson also contends that a hearing before a 2–person Commission violates due process. However, he provides no authority for the proposition that due process mandates a Civil Service Commission consisting of not less than three persons.

[5]Even if the issue had been preserved for review, we would not find that the hearing was improper merely because it took place before a 2–person Commission. We note that RCW 41.12.030 specifically provides that

[t]wo members of [the Civil Service Commission] shall constitute a quorum and the votes of any two members of such commission concurring shall be sufficient for the decision of all matters and the transaction of all business to be decided or transacted by the commission . . .

On receiving a petition which complies with the foregoing Rule, the Commission shall determine whether the matter will be heard before the entire Commission or one or more named members of the Commission or a hearing board or officer appointed by the Commission and shall make such appointments as may be necessary.

As a reason for his request, Gibson cites "the intricacies of the legal and constitutional issues involved."[6] However, RCW 41.12.090 provides that the Commission's investigation "shall be confined to the determination of the question of whether such removal, suspension, demotion or discharge was or was not made for political or religious reasons and was or was not made in good faith [f]or cause." Gibson has simply failed to show that the Commissioners themselves were not equipped to answer these questions, or that for any other reason their denial of his request was arbitrary and capricious.

## APPEARANCE OF FAIRNESS

Next, Gibson contends that Commissioner Kammeyer's participation in the hearing violated the appearance of fairness doctrine. This is so, he argues, because Kammeyer was employed by a firm which had some unspecified business dealings with the City. Furthermore, Kammeyer had hired as a security guard a certain police officer who, according to Gibson, was one of his "protagonists"[7] and who, in some unspecified way, was "embroiled" in the dispute over Gibson's discharge. Finally, according to Gibson,

---

[6]In addition, Gibson cites the "many conflict–of–interest and appearance–of–fairness issues." These will be discussed separately below. Gibson also contends, without proof, that the Commissioners denied his request because they wanted to "predestine" the outcome of the hearing. Had that been their purpose, then presumably they could have achieved it by appointing a hearing officer of their choice, as provided for by ACSR 5.04.

[7]We assume that Gibson means "antagonists."

Kammeyer and Mayor Roegner engaged in "several" ex parte discussions pertaining to Gibson's case.

■ Under the appearance of fairness doctrine, commission members charged with conducting impartial hearings must execute their duties with the appearance, as well as the reality, of fairness. *King Cy. Water Dist. 54 v. King Cy. Boundary Review Bd.*, 87 Wn.2d 536, 541, 554 P.2d 1060 (1976). Under appropriate circumstances, the participation of a member whose employer has an interest in the outcome may violate the doctrine. *See Save a Valuable Env't v. Bothell*, 89 Wn.2d 862, 872–73, 576 P.2d 401 (1978). Although it need not be shown that a commission member's interest actually influenced his decision, *see King Cy. Water Dist. 54*, at 541, the potential for influence must be shown by specific evidence, *see Sherman v. Moloney*, 106 Wn.2d 873, 884, 725 P.2d 966 (1986).

In this case, Gibson has failed to provide such evidence. Although he states in his brief that the record is "replete" with evidence of conflicts of interest, he has not directed this court to any. *See* RAP 10.3(a)(5) (brief should contain citations to relevant parts of the record). The court is simply left to wonder what sort of business dealings Kammeyer's employer had with the City and what possible interest his employer might have had in the outcome of the hearing. Furthermore, of the "several" ex parte contacts between Commissioner Kammeyer and Mayor Roegner, Gibson can identify only one. That contact pertained solely to scheduling matters, and in no way implicates the appearance of fairness doctrine. In short, counsel has directed this court to no specific evidence from which it could conclude that the hearing was anything but fair and impartial.

We affirm.

The remainder of this opinion has no precedential value.

Therefore, it will be filed for public record in accordance with the rules governing unpublished opinions.

COLEMAN, A.C.J., concurs.[8]

After modification, further reconsideration denied February 24, 1988.

Review denied by Supreme Court May 31, 1988.

---

[8]Judge Ringold had indicated his concurrence prior to his retirement on January 11, 1988.