[No. 9229–1–III. Division Three. June 15, 1989.]

ROBERT L. WEBSTER, ET AL, *Respondents,* v. STATE FARM MUTUAL AUTOMOBILE INSURANCE CO., *Appellant.*

*Timothy Cronin* and *Mullin, Etter & Cronin,* for appellant.

*David Grant* and *Crary & Clark,* for respondents.

GREEN, J.—State Farm Mutual Automobile Insurance Company appeals a judgment "stacking" uninsured motorist coverage under three State Farm policies issued to Robert and Patricia Webster. State Farm contends this was error. We agree and reverse.

The Websters insured their vehicles with State Farm over a period of years while living in various other states. Their practice was to contact the local State Farm agent for their policies at each new location. In keeping with this practice, when they moved to Spokane in late summer 1982, Mrs. Webster contacted a local State Farm agent and policies were obtained covering their two vehicles. In March 1984 they purchased a third automobile and Mrs. Webster obtained insurance on that vehicle from the State Farm agent.

In July 1984 Mr. Webster was injured while vacationing in California when a car forced his bicycle off the road. The identity of the driver was never ascertained. At the time of the accident, the Websters had separate policies on their three vehicles, each of which contained a provision for underinsured bodily injury benefits in the amount of

$50,000. When they filed an underinsured motorist claim, State Farm denied coverage.

The Websters then filed this action alleging breach of contract, negligence and violation of the Consumer Protection Act.[1] Each of the three State Farm policies prohibited the stacking of underinsured motorist coverage. The Websters alleged they never received their substitute policies until after the accident and therefore the anti–stacking provisions were ineffective. State Farm denied this allegation and alleged the policies were delivered; alternatively, delivery was not necessary to effectuate the anti–stacking provisions.

At trial Mr. Webster testified in person and Mrs. Webster's testimony was presented by deposition. Mrs. Webster testified that when she applied for insurance in 1982 and 1984, it was State Farm's secretary who took the information. At the 1982 meeting, Mrs. Webster requested State Farm duplicate the coverage they had in Georgia. Mrs. Webster stated she received copies of the insurance applications and the declaration pages, but did not receive the policies until after the accident. Mr. Webster's testimony confirms Mrs. Webster's statement regarding receipt of the policies. Neither Mr. Webster nor his wife read any of their current or prior State Farm policies. Mr. Webster testified he assumed all State Farm policies were the same, limits being the only variable.

Mr. Boutz, the State Farm agent, had no independent recollection of meeting with Mrs. Webster, but believed it was he, not his secretary, who met with her in 1982 because his handwriting was on both applications. He believed he gave Mrs. Webster the policies on the date he met with her in keeping with his practice. Additionally, each application

---

[1]The parties subsequently stipulated to a dismissal of the negligence claim. State Farm paid the Websters the underinsured motorist limit of $50,000 under one of the policies, but refused to pay the underinsured motorist benefits under the two remaining policies based upon anti–stacking provisions contained in the policies.

stated: "Mutual company policy booklet delivered to applicant *9–8–82.*" The date of delivery was in Mr. Boutz's handwriting. Mrs. Webster signed each application acknowledging she had read it and the statements contained therein were correct.

With regard to the third vehicle, Sharon Long, Mr. Boutz's secretary, testified she recalled meeting with Mrs. Webster on March 26, 1984. She identified the writing on that application as hers. The space on the application indicating when the policy was delivered was blank, although she stated she was certain she handed the policy booklet to Mrs. Webster at the time the application was made. However, on cross examination she admitted her deposition testimony reflected she did not know whether she had given Mrs. Webster the policy, but assumed she had because it was her habit to do so.

Based on this evidence, the court found none of the policies had been delivered and for this reason refused to give effect to the anti–stacking provisions. This appeal followed.

State Farm contends the court erred in finding the policies had not been delivered until after the accident. We agree.

Findings of fact supported by substantial evidence will not be disturbed on appeal. *Bering v. Share,* 106 Wn.2d 212, 220, 721 P.2d 918, *cert. dismissed,* 479 U.S. 1050 (1986). Here, the critical issue of delivery is based almost entirely upon Mrs. Webster's deposition testimony. It was she who met with the State Farm agents in 1982 and again in 1984. When the findings are based upon deposition testimony, the appellate court may disregard them and determine which findings should have been made. *In re Estate of Reilly,* 78 Wn.2d 623, 654, 479 P.2d 1, 48 A.L.R.3d 902 (1970); *Danielson v. Seattle,* 45 Wn. App. 235, 240, 724 P.2d 1115 (1986), *aff'd,* 108 Wn.2d 788, 742 P.2d 717 (1987). Thus, we are in as good a position as the trial court to determine whether she received the policies.

Because of the passage of time and the tendency of memories to fade, we believe the best evidence is the applications themselves. It is undisputed the 1982 applications are in Mr. Boutz's handwriting. Contrary to Mrs. Webster's memory, those applications reflect she met with Mr. Boutz, not his secretary. The applications indicate the two policies were delivered to Mrs. Webster at that time. In light of this evidence, the court erred in not finding the 1982 policies had been delivered.

A different result obtains with respect to the 1984 application. The delivery date on that application was blank and the testimony of Mrs. Webster and Ms. Long on the issue of delivery is conflicting. In this situation, the finding that the 1984 policy was not delivered is supported by the evidence.

Having found the 1982 policies to have been delivered, the Websters are bound by the anti–stacking provisions contained in those policies. Since State Farm paid the limits on one policy, it has satisfied its obligation to the Websters.

Alternatively, even if the 1982 policies had not been delivered, the result is nevertheless the same. As State Farm points out, the Websters confuse the distinction between "delivery" and "issuance". It is not the delivery but the issuance of a policy that renders it effective, *i.e.,* when the policy is signed and executed by officials of the insurer who are legally authorized to bind it. 1 R. Anderson, *Insurance* § 10.2 (2d ed. 1984). *See also Frye v. Prudential Ins. Co. of Am.,* 157 Wash. 88, 288 P. 262 (1930) where the insurer was estopped from claiming nondelivery as a basis for the denial of coverage. Here, two of the policies were issued almost 2 years before the accident and the other policy had been in effect for about 4 months.

An insurance policy should be given a fair, reasonable, and sensible construction, consonant with the apparent object and intent of the parties, such as would be given by the average person purchasing insurance. *E–Z Loader Boat Trailers, Inc. v. Travelers Indem. Co.,* 106 Wn.2d 901, 907,

726 P.2d 439 (1986). In *Richardson v. Brown,* 443 F.2d 926 (10th Cir. 1971), the insured attacked the insurer's notice of cancellation on the ground she had not received the policy and thus the cancellation provision did not bind her. The court stated at page 927:

> The effect of the cancellation clause is attacked on the ground that it was never agreed to by the insured. Reliance is had on 15 O.S.1961, § 138, which provides that a contract in writing takes effect upon delivery to the party in whose favor it is made. Here an application was signed, a premium paid, and a binder issued. The insurer accepted the application and executed the policy. This is enough. Delivery of the policy is not essential to its enforceability. . . .
>
> We recognize the rule that an enforceable contract requires a meeting of the minds on the essential elements of the contract. See Massachusetts Bonding & Ins. Co. v. R. E. Parsons Electric Co., 8 Cir., 61 F.2d 264, 268 [(1932)]. There is no evidence that the insured would have rejected the policy if, after receipt, she had read and was unwilling to accept the cancellation clause. There is no intimation that the method of giving notice of cancellation was an essential element of the contract, and there is no claim of fraud or other misconduct on the part of the insurer. Cf. Perez v. Fort Worth Mut. Benev. Ass'n, Tex.Ct.Civ.App., 291 S.W. 574 [(1927)].

We find *Richardson* persuasive.[2]

 Neither Mr. nor Mrs. Webster had read any of their prior State Farm policies until after the issue of coverage was raised in this case. There is no evidence they intended to purchase insurance permitting stacking. Nor is there any evidence the Websters would have rejected the policy had they known it contained an anti-stacking provision. The Websters had the benefit of coverage under two of the policies for 2 years. Under these circumstances, they must

---

[2]The Websters' reliance on *Foremost Ins. Co. v. Putzier,* 102 Idaho 138, 627 P.2d 317 (1981) is misplaced. There the insurer was estopped to deny coverage under an ambiguous oral agreement involving a bare promise of coverage. Here, the Websters received the declaration sheets which set forth the coverage and placed the Websters on notice that: "Your policy consists of this page, any endorsements, and the policy booklet, Form 9847.3 . . ."

accept the policies' limitations as well as the benefits on the dollar amount of coverage purchased by them. To do otherwise ignores the intent of the parties and impermissibly creates a contract the parties did not make for themselves. *Agnew v. Lacey Co–Ply,* 33 Wn. App. 283, 288, 654 P.2d 712 (1982), *review denied,* 99 Wn.2d 1006 (1983).

Reversed.

THOMPSON, C.J., and MUNSON, J., concur.

Review denied at 113 Wn.2d 1018 (1989).