# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| JONATHAN PEARSON, a single individual, | ) ) | NO. 71925-4-I |
| Appellant, | ) ) | |
| | ) | DIVISION ONE |
| v. | ) ) | |
| STATE OF WASHINGTON, a political corporation; and WASHINGTON STATE DEPARTMENT OF TRANSPORTATION, an agency of the STATE OF WASHINGTON, | ) ) ) ) ) ) | |
| | ) | UNPUBLISHED OPINION |
| Respondent. | ) ) | FILED: September 28, 2015 |
| | ) | |

LAU, J. — Jonathan Pearson was absent from work from 2000 until 2009 when Washington State Ferries (WSF) terminated his employment. During this time, he took extended periods of unapproved leaves of absence without providing medical verification requested repeatedly by WSF. Pearson appeals the trial court's summary judgment dismissal of his claims for due process violation, wrongful discharge, discrimination and retirement/military leave against his former employer WSF. Appearing pro se, Pearson disputes facts contained in various parts of the record, as

well as factual statements made by WSF and the trial court. Because the conclusory, unsupported, and largely irrelevant arguments in his briefs advance no meritorious claims, his appeal fails. Nevertheless, our review of the record demonstrates the trial court properly granted summary judgment dismissing all of Pearson's claims. We affirm.

## FACTS

Pearson was hired by WSF in 1984 and worked as an on-call mate or Master.[1] In March 2000, Pearson took unapproved leave for "medical reasons." Clerk's Papers (CP) at 99. He asserted that his leave was for a foot problem he developed while onboard a ferry. He acknowledged that he never submitted a request for extended leave.

In April 2000, Pearson unilaterally extended his leave citing a sleep disorder that interfered with his ability to return to work. He took unapproved leave for several years for this condition. Pearson admitted he never contacted WSF about taking this extended leave.

During this time, WSF repeatedly asked Pearson to provide documentation from a medical professional verifying he had a medical condition that prevented him from working during the period of his unapproved leave. For instance, in October 2001, the human resource manager sent him a letter about his unapproved absence since March 2000, lack of medical verification, his options, and the consequences of his noncompliance:

---

[1] In a letter dated April 14, 2009, WSF referred to Pearson as a Master. He asserts that his position is a Mate.

-2-

> [Y]ou have been off work since March 2000. You previously requested leave until May 2001 . . . we have not received follow-up certification from your doctor of your continued inability to work. Your leave of absence since that time have been unapproved. . . .

CP at 99. The letter outlined three options: 1) return to work with a "medical fit-for-duty" and medical verification of the medical reasons for the absence from May 2001 to present; 2) reasonable accommodation; or 3) retirement disability. The letter set a November 13, 2001 deadline for Pearson's response and decision. "Otherwise WSF will commence the separation process." CP at 99. In 2003, WSF again stated it was awaiting medical documentation relating to Pearson's unapproved absences. WSF sent Pearson additional letters in 2003 and 2004.

In response, Pearson submitted several documents. He submitted a letter from a dentist indicating he had a dental condition requiring appointments every three to four months. In December 2001, he submitted a physician's note stating he was capable of performing the physical duties of his job. In March 2002, he submitted a medical leave form indicating he had been seen in a medical office for a sleep related disorder and to "see attached notes," but no attachments were included. CP at 119. In October 2003, Pearson requested authorization to use his sick leave for testing. In December 2003, he submitted a doctor's note indicating he attempted to make appointments with the doctor between June 2001 and November 2001. None of Pearson's submissions verified that Pearson suffered a medical condition that prevented him from working during his periods of unapproved absence.

WSF conducted predisciplinary conferences on March 17, 2003, and June 24, 2004, to address his extended periods of unapproved leaves. Pearson acknowledged attending "two or three" conferences. CP at 194.

From 2004 to 2008, Pearson was inactive with WSF.

On December 4, 2008, WSF sent Pearson a letter stating it planned to separate him from employment based on Pearson's failure to provide the requested medical verification for his unapproved extended absences from work.

On April 14, 2009, WSF sent Pearson a letter detailing the history of his violations. The letter notified Pearson that a predisciplinary hearing was scheduled for April 30, 2009. The letter presented Pearson with the option of appearing in person with a representative or submitting a letter. Pearson responded by submitting a four page letter.

On May 19, 2009, WSF terminated Pearson's employment. Pearson's union, the International Organization of Masters, Mates, and Pilots, filed a grievance on his behalf. WSF denied the grievance based on Pearson's failure to submit any documentation confirming his medical conditions. The union declined to pursue an appeal based on Pearson's failure to provide requested medical documentation.

On February 12, 2010, Pearson filed an unfair labor practice complaint with the Public Employee Relations Commission (PERC).[2] At the subsequent hearing, Pearson claimed that WSF discriminated against him and terminated him based on his "sleep related" issues. CP at 171-79. PERC found no violation of Pearson's rights and his termination was not connected to any union related activity. The PERC examiner concluded WSF engaged in no unfair labor practices.

---

[2] Pearson originally filed his complaint with the Marine Employees Commission (MEC). Pearson's claim was transferred to PERC for further proceedings.

Pearson appealed the PERC decision to the Marine Employees Commission (MEC). The MEC upheld the PERC examiner's decision.

On July 9, 2012, Pearson filed a lawsuit in King County Superior Court alleging causes of action for wrongful termination, denial of reasonable accommodation, denial of military leave, and wrongful denial of retirement benefits.

On March 3, 2014, WSF filed a motion for summary judgment of dismissal on the grounds that Pearson failed to establish a prima facie case for each of his claims.

On April 4, 2014, the trial court considered oral argument on WSF's summary judgment motion. Although the deadline for submitting a response had passed, the trial court allowed Pearson to submit several documents to the court and to explain their significance to his various claims. After considering argument from each party, the court granted summary judgment in favor of WSF and dismissed Pearson's claims.

Pearson appeals.

## ANALYSIS

At the outset, we note that Pearson's pro se briefing is inadequate and in violation of the rules of appellate procedure. RAP 10.3(a).[3] It appears his principal claim is that the trial court did not fully consider the factual record. But Pearson's conclusory, unsupported, and largely irrelevant arguments fail to identify any meritorious legal theories that would support a favorable resolution of his appeal.[4] He also provides

---

[3] For example, Pearson's briefing does not include proper assignments of error, statement of the case, citation to the record, or citation to meaningful legal authority.

[4] We need not consider arguments that are unsupported by meaningful analysis or authority. Cowiche Canyon Conservancy v. Bosely, 118 Wn.2d 801, 809, 828 P.2d 549 (1992) (arguments must be supported by authority); State v. Elliott, 114 Wn.2d 6, 15, 785 P.2d 440 (1990) (court need not consider claims that are insufficiently argued); Sate v. Marintorres, 93 Wn. App. 442, 452, 696 P.2d 501 (1999) (noting that pro se

no meaningful factual or legal analysis. Thus, on this basis alone, his appeal fails. Nonetheless, our examination of the record shows that the trial court properly granted summary judgment dismissing Pearson's claims.

We review an order of summary judgment de novo, performing the same inquiry as the trial court. Ranger Ins. Co. v. Pierce County, 164 Wn.2d 545, 552, 192 P.3d 886 (2008). Summary judgment is appropriate if the record shows there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. CR 56(c). A material fact is that which will affect the outcome of the litigation. Ruff v. County of King, 125 Wn.2d 697, 703, 887 P.2d 886 (1995).

A defendant may move for summary judgment in two ways: first, the defendant may set out its version of the facts and allege that there is no genuine issue as to the facts as set out. Guile v. Ballard Cmty. Hosp., 70 Wn. App. 18, 21, 851 P.2d 689 (1993). Second, a moving party may meet its burden on summary judgment by pointing out that the moving party lacks sufficient evidence to support its case. Guile, 70 Wn. App. at 21. "Mere allegations, argumentative assertions, conclusory statements, and speculation do not raise issues of material fact that preclude a grant of summary judgment." Greenhalgh v. Dep't of Corrections, 160 Wn. App. 706, 714, 248 P.3d 150 (2011). Once the moving party meets its burden by showing no genuine issue of material fact, the nonmoving party must set forth specific facts that rebut the moving party's contentions and establishing a genuine issue of material fact for trial. Greenhalgh, 160 Wn. App. at 714.

appellants are held to the same standard as attorneys and refusing to consider pro se's conclusory and unsupported claims).

Due Process

Pearson claimed that he was denied due process because he was not allowed to appear and present evidence at his pretermination hearing.

In the public employment context, a pretermination hearing need only be an initial check against mistaken decisions. Danielson v. Seattle, 108 Wn.2d 788, 798, 742 P.2d 717 (1987). "The tenured public employee is entitled to oral or written notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present his side of the story." Danielson, 108 Wn.2d at 798.

Pearson attended two predisciplinary conferences. The first was held on March 17, 2003. The second occurred on June 24, 2004. A third conference was held on April 30, 2009. Before the conference, Pearson received notice giving him the choice between appearing in person, with a representative, or submitting a written response. Pearson submitted a four page written response. Pearson failed to allege any facts sufficient to establish a due process violation. His due process claim fails.

Wrongful Discharge

Pearson alleged that he was wrongfully terminated "without just cause" from his position with WSF. CP at 5.

WSF contends that the cause of action for wrongful discharge does not apply to a public employee like Pearson, citing McGuire v. State, 58 Wn. App. 195, 791 P.2d 929 (1990) (rejecting claim that wrongful discharge cause of action applied because statutory scheme gave employee no right to challenge cause of termination). We decline to address this contention. Even assuming the cause of action applied, Pearson failed to establish a prima facie case. A claim for wrongful termination includes four

-7-

elements: (1) existence of a clear public policy, (2) that discouraging conduct in which the employee engaged would jeopardize the public policy, (3) that the employee's policy related conduct was the cause of the dismissal, and (4) that the employer lacks an overriding justification for the dismissal. Gardner v. Loomis Armored Inc., 128 Wn.2d 931, 941, 913 P.2d 377 (1996). Our review of the record reveals Pearson failed to establish any of these elements.

On the first element, courts have found a violation of a clear public policy where the discharge resulted from the refusal to commit an illegal act, from performing a duty or obligation, from exercising a legal right or privilege, or from whistle-blowing activity. Dicomes v. State, 113 Wn.2d 612, 618, 782 P.2d 1002 (1989). The record shows only that Pearson was terminated after taking substantial unauthorized leave and failing to submit medical verification of his inability to work. Pearson failed to identify any valid public policy implicated by his termination or to articulate how the threat of termination would contravene that policy. Pearson fails to establish the first two elements.

Pearson submitted no evidence that his termination was related to any policy based conduct. Nor did Pearson offer any evidence that would have cast doubt on WSF's stated reason for firing him. Pearson failed to establish elements three and four. His wrongful discharge claim fails.

Discrimination

Pearson claimed that WSF discriminated against him because of his participation in the Washington National Guard and the U.S. Army Reserves.

To survive summary judgment, a plaintiff bears the initial burden of establishing a prima facie case of discrimination. Scrivener v. Clark College, 181 Wn.2d 439, 446, 334 P.3d 541 (2014).

Pearson failed to produce any evidence at summary judgment that his participation in the Washington National Guard or the U.S. Army Reserves was a factor in his termination.[5] And, when the trial court permitted Pearson to submit additional evidence at the summary judgment hearing, he produced none. Pearson fails to identify any evidence in the record that would create a genuine issue of material fact on this issue.

Pearson also claimed he was discriminated against based on his disability and that WSF failed to accommodate his disability. A prima facie claim for disability discrimination requires a plaintiff to show he was, (1) disabled, (2) subject to an adverse employment action, (3) doing satisfactory work, (4) discharged under circumstances that raise a reasonable inference of unlawful discrimination. Brownfield v. City of Yakima, 178 Wn. App. 850, 873, 316 P.3d 520 (2014).

But Pearson failed to supply evidence suggesting he suffered from a disability, or that the disability was the reason for his termination.[6] He also failed to submit evidence of satisfactory job performance, or that he was discharged under circumstances

---

[5] At his deposition, Pearson stated only his opinion that he was "outspoken," "confident," and that he had probably "made some bureaucratic enemies." CP at 210.

[6] Pearson includes a letter in his reply brief dated April 11, 1995, stating that he has obstructive sleep apnea and recommending he work only a day or a swing shift. This document does not appear in the record and it is unclear whether it was ever presented to WSF. It does not support his claim and we do not consider it here. RAP 10.3(a)(8).

producing a reasonable inference of unlawful discrimination. Pearson's unsupported assertions are insufficient to make out a prima facie case.

Likewise, Pearson failed to establish that he fulfilled his obligation to (1) provide notice to WSF of his alleged disability, and (2) that WSF failed to take affirmative steps to accommodate that disability, as he was required to do for an accommodation claim. See Goodman v. Boeing Co., 127 Wn.2d 401, 408, 899 P.2d 1265 (1995) (employee bears burden of providing notice of disability and associated limitations to employer before duty to accommodate is triggered). Pearson admitted at his deposition that he failed to submit any written request for accommodation to WSF or to provide a doctor's note clarifying any necessary accommodations. His discrimination claim fails.

Retirement Date and Military Leave

Pearson alleged in his complaint that WSF miscalculated his retirement date and that he was owed pay for military leave taken in 2002. But Pearson provided no evidence beyond his own conclusory assertions either that WSF miscalculated his retirement date or that his military benefits were improperly withheld.

Pearson also failed to demonstrate he exhausted his administrative remedies. It is well settled that a litigant must first exhaust available administrative remedies before seeking judicial review. Under RCW 34.05.534, all agency employees must first exhaust administrative remedies before filing a claim in state court. Buechler v. Wenatchee Valley College, 174 Wn. App. 141, 153, 298 P.3d 110 (2013). If the party seeking relief failed to pursue an available administrative remedy, it is error for the court to entertain the action. Cost Mgmt. Servs. v. City of Lakewood, 178 Wn.2d 635, 641, 310 P.3d 804 (2013).

As to his retirement claim, Pearson stated at the summary judgment hearing that he called and asked the ferry system to change his employment date. Apparently, he took no additional steps beyond this initial phone call.

As to his military leave claim, Pearson claimed that he submitted a request for two weeks of paid leave in 2002 but it was denied. After this denial, he said he talked to his supervisor but took no additional action and completed no additional paperwork. Pearson submitted no evidence that he pursued any administrative remedies.

The collective bargaining agreement governing Pearson's employment provides a clear procedure for resolving disputes. Pearson failed to establish that he invoked these procedures before filing his claims in superior court. Pearson's failure to establish either a miscalculated retirement date or wrongful denial of military leave, along with his failure to pursue administrative remedies, precludes his claim.[7]

## CONCLUSION

For the reasons discussed above, we affirm the grant of summary judgment dismissing Pearson's claims.

WE CONCUR:

Cox, J.

___

[7] The trial court dismissed Pearson's retirement benefits claim without prejudice so that he could pursue that claim using the administrative procedures available to him.