[No. 20391-6-I. Division One. April 24, 1989.]

SCARSELLA BROS., INC., *Appellant,* v. THE DEPARTMENT OF LICENSING, *Respondent.*

*Jerry W. Spoonemore, James H. Wishaar,* and *Montgomery, Purdue & Blankinship,* for appellant.

*Kenneth O. Eikenberry, Attorney General,* and *Margaret A. Gaffney, Assistant,* for respondent.

GROSSE, J.—Scarsella Brothers, Inc. (Scarsella) is a licensed general contractor engaged in heavy construction work in the state of Washington. It operates vehicles licensed for highway use as well as off–road vehicles such as bulldozers, graders, and loaders. The State of Washington imposes a special fuel tax on all diesel fuel consumed on public highways, while all diesel fuel consumed off the

public roads is exempt. Special Fuel Tax Act, RCW 82.38 (Act). *See* RCW 82.38.080. "Special fuel" includes combustible gases and liquids suitable for the generation of power for propulsion of motor vehicles such as diesel, propane, and natural gas. It does not include motor vehicle fuel such as gasoline and gasohol. *See* RCW 82.38.020(5); RCW 82.36.010(2). As a special fuel tax licensee, Scarsella is allowed to purchase diesel fuel in bulk without paying fuel tax at the time of purchase. RCW 82.38.090. Scarsella is required to file monthly fuel tax user reports showing what fuel has been used on the public highways, and thereafter pay a special fuel tax on those gallons. RCW 82.38.140.

The subject of this appeal is a dispute over the amount of special fuel tax which Scarsella must pay to the Washington State Department of Licensing (Department), pursuant to the Act, for diesel fuel consumed during the period of an audit, April 1, 1982, through January 31, 1985.

The Department conducted an audit of the special fuel tax returns filed by Scarsella. Scarsella purchased or used a total of 1,102,649 gallons of special fuel during this period. It reported the use of some 270,407 gallons of special fuel in its licensed vehicles used on Washington highways. Scarsella paid the special fuel tax on these gallons. Scarsella claims to have used the remainder of the special fuel (832,242 gallons) in its off–highway construction equipment. Scarsella admits it did not maintain exact special fuel usage records, but claims its records adequately explain and prove the estimated off– and on–highway use of special fuel to enable the company to file correct and accurate monthly returns.

Scarsella was assessed a total deficiency of $159,953.16 in tax, penalties, and interest. Scarsella pursued its administrative remedies which resulted in a final order by the Director of the Department denying reassessment and assessing a final amount of additional tax, penalties, and interest in the amount of $201,086.12.

The Department claims Scarsella did not maintain adequate records on its use of exempt fuel, as required by

statute.[1] Therefore, the Department determined that Scarsella owes special fuel tax on *all* the diesel fuel purchased during the reporting period.[2] Scarsella contends its record keeping was adequate to prove the off–road use of the fuel that it claims is exempt. Scarsella used a sophisticated formula to determine the amount of special fuel used on the public roads from which it then calculated the amount for which it was entitled to the off–road use exemption.[3]

Pursuant to the administrative procedure act, Scarsella appealed this decision to the superior court. Additionally, in March of 1987, Scarsella learned it would have been entitled to a credit (or refund) for all sales taxes paid on the special fuel because a user either pays the special fuel tax or a sales tax, but not both. By the time this was discovered, the statute of limitations for refunds (RCW 82.32-.060) had run on some of the sales taxes Scarsella paid. The trial court denied alternative motions for either a remand to determine the credit due, or for reconsideration, and

---

[1]Former RCW 82.38.140 required a special fuel user to keep records of the number of gallons used for taxable purposes; the number of gallons used not subject to tax; and, for vehicles used both on and off the highway, detailed mileage records on an individual vehicle basis. It is these records, particularly the latter, that Scarsella is alleged not to have kept adequately.

[2]In determining the tax due, the Department gave credit for the special fuel tax already paid on the gallons of fuel reported by Scarsella as being used in on–highway vehicles.

[3]During the audit period, Scarsella kept daily time cards for the drivers and operators of its equipment. Pursuant to union rules, trucks used in on–road operations were driven by members of one union, while the heavy equipment (off–road) operators were members of another. The time cards indicate the number of hours each piece of equipment was checked out to a driver or an operator for the day. This time was logged into daily and monthly hour summaries for the equipment used at each of Scarsella's job sites. Scarsella computed its taxable fuel use based upon the hours of use (*not* discounting for lunch breaks or other down time) multiplied by an average fuel consumption rate of 4.75 gallons of fuel for each hour of operation. This consumption rate was based on the historical experience of Scarsella, the manufacturer's (Mack Trucks) data on engine fuel consumption, and Scarsella's own records. The manufacturer provided fuel consumption rates for all engine types used in Scarsella's equipment, both fully loaded and empty.

entered an order affirming the decision of the Director of the Department.[4] Scarsella paid the taxes, penalties, and interest, clearly designating the payment as "under protest" and then appealed to this court.

Laws of 1988, ch. 51, § 1, amending RCW 82.38.140, reads as follows:

(1) Every special fuel dealer, special fuel supplier, special fuel user, and every person importing, manufacturing, refining, dealing in, transporting, or storing special fuel in this state shall keep for a period of not less than three years open to inspection at all times during the business hours of the day to the department or its authorized representatives, a complete record of all special fuel purchased or received and all of such products sold, delivered, or used by them. Such records shall show:

(a) The date of each receipt;

(b) The name and address of the person from whom purchased or received;

(c) The number of gallons received at each place of business or place of storage in the state of Washington;

(d) The date of each sale or delivery;

(e) The number of gallons sold, delivered, or used for taxable purposes;

(f) The number of gallons sold, delivered, or used for any purpose not subject to the tax imposed herein;

(g) The name, address, and special fuel license number of the purchaser if the special fuel tax is not collected on the sale or delivery;

(h) The inventories of special fuel on hand at each place of business at the end of each month.

(2)(a) All special fuel users using special fuel in vehicles licensed for highway operation shall maintain detailed mileage records on an individual vehicle basis.

---

[4]We will not consider Scarsella's claim with regard to the issue of a sales tax credit or refund. Scarsella is estopped from arguing this to the court as it did not raise the issue at the administrative hearing. Review by the superior court and by this court is limited to the record and issues raised during the course of the administrative hearing. *See Griffin v. Department of Social & Health Servs.*, 91 Wn.2d 616, 620, 590 P.2d 816 (1979); *Gibson v. Auburn*, 50 Wn. App. 661, 668, 748 P.2d 673, *review denied*, 110 Wn.2d 1028 (1988).

(b) Such operating records shall show both on–highway and off–highway usage of special fuel on a daily basis for each vehicle.

(3) Persons using special fuel for heating purposes only are not required to maintain records of fuel usage.

(4) Invoices shall be prepared for sales and deliveries of special fuel in the manner and containing such information as may be prescribed by the department.

Every special fuel supplier, special fuel dealer or special fuel user making such sales or deliveries of special fuel and every person so receiving and purchasing special fuel must each retain one copy of each such invoice as part of his permanent records for the time and purposes above provided.

(5) Every special fuel user shall keep, in addition to his records of deliveries into motor vehicles, a complete record as prescribed by the department of the total gallons of special fuel used for other purposes during each month and the purposes for which said special fuel was used.

(6) Subsections (1)(f), (2)(b), and (5) of this section do not apply to special fuel users when the special fuel is used off–highway in farming, construction, or logging operations. Upon filing a special fuel user tax report, every such special fuel user shall certify and bear the burden of proof as to the number of gallons of special fuel used off–highway.

The Legislature amended the statute to avoid the burdensome application of the record–keeping requirements by some special fuel users. Final Bill Report, SSB 6399, 50th Legislature (1988). The summary of the Final Bill Report stated:

Licensed special fuel users who use special fuel off–highway in farming, logging and construction operations will be exempt from keeping records of the gallons of fuel used off public highways of the state. They are exempt from keeping the following records: (1) the number of gallons used for any purpose not subject to the special fuel tax; (2) a breakdown of on–highway and off–highway special fuel usage on a daily basis; (3) a complete record

by month of the total gallons of special fuel used and the purposes for which it was used.

Our first inquiry is whether the amendment to former RCW 82.38.140 operates retroactively. The Department argues for a prospective application of this legislation; Scarsella contends the amendment should be applied retroactively.

The presumption that a statute will apply prospectively will be rebutted if (1) there is legislative intent to apply the law retroactively, or (2) the statute is remedial and a retroactive application would further the remedial purpose. *See Macumber v. Shafer,* 96 Wn.2d 568, 570, 637 P.2d 645 (1981). *See also Marine Power & Equip. Co. v. Human Rights Comm'n Hearing Tribunal,* 39 Wn. App. 609, 616–17, 694 P.2d 697 (1985).

Scarsella contends the amended legislation is a clarification of existing law, is clearly remedial, curative, and resolves an ambiguity; and therefore, that it should be construed to apply retroactively. *State v. Taylor,* 47 Wn. App. 118, 123, 734 P.2d 505 (1987). *See also State v. Jones,* 110 Wn.2d 74, 82, 750 P.2d 620 (1988) (amendment that clarifies ambiguous statute and does not contravene judicial construction may be retroactively applied). The Department argues the amendment is not a clarification, is not remedial, and affects the Department's vested right to the tax. *See Johnson v. Morris,* 87 Wn.2d 922, 557 P.2d 1299 (1976).

■■ There is no express legislative statement of retroactive application to be found in the legislative history of the amendment. However, legislative intent can be determined from the purpose of the statute. *Pape v. Department of Labor & Indus.,* 43 Wn.2d 736, 741, 264 P.2d 241 (1953); *Marine Power & Equip. Co.,* at 619 n.7. The statutory rules used to determine the amount of tax owed were not changed. The only change was in the procedural rules relating to the accounting methods for reporting. The taxpayer/special fuel user retained the burden of proof as to the number of gallons used off–highway. The legislative

history coupled with the fact that record keeping is procedural in nature confirms our view that the amendment is procedural and does not affect substantial rights. Barring any interference with vested rights, the amendment should be applied retroactively. *See Gilmore v. Hershaw,* 83 Wn.2d 701, 705, 521 P.2d 934 (1974); *Snow's Mobile Homes, Inc. v. Morgan,* 80 Wn.2d 283, 494 P.2d 216 (1972).

The State contends that it has vested rights to the taxes paid under protest so as to prohibit a retroactive application of the amended statute. The Department argues that under the cases of *Seattle–King Cy. Coun. of Camp Fire v. Department of Rev.,* 105 Wn.2d 55, 711 P.2d 300 (1985), and *Yakima v. Huza,* 67 Wn.2d 351, 407 P.2d 815 (1965), it is unconstitutional to refund a collected tax because of a subsequently enacted retroactive statute. The State relies in particular on language from the *Camp Fire* case:

> [W]e reject the . . . position that Const. art. 8, §§ 5 and 7 preclude the Legislature from repealing taxes which are vested in the State prior to the effective date of the repealing statute.
>
> Const. art. 8, § 5 provides, "The credit of the state shall not, in any manner be given or loaned to, or in aid of, any individual, association, company or corporation."
> . . .
> Based on its theory of vesting, the State contends that repealing a tax which has come due constitutes a gift of credit or money to the affected taxpayer. While "tax money heretofore *collected* validly cannot be refunded simply on the basis of the retroactive repeal" (italics ours), *Yakima v. Huza,* 67 Wn.2d 351, 359, 407 P.2d 815 (1965), this limitation on legislative power does not apply before the taxes have been collected.

*Council of Camp Fire,* at 60. *See also Snow's Mobile Homes,* at 292; *North Spokane Irrig. Dist. 8 v. Spokane Cy.,* 173 Wash. 281, 283, 22 P.2d 990 (1933) ("the state, through its legislature, may abolish . . . a tax lien of any kind"). The State argues that because it collected the tax, a refund is not available even if the amendment is to be applied retroactively because the tax was vested in the State once it was collected. We do not agree.

■ The holdings on the facts of *Camp Fire* and, more importantly, the *Huza* case are not applicable to the case at bar. Scarsella maintained at all times that the assessment was invalid. It paid the tax "under protest" challenging the *validity* of the collection of the tax. The gist of the holdings of *Camp Fire* and *Huza* is that where the authority for the collection of a tax is not questioned and a tax is imposed, the State cannot give refunds or credits. Here, the validity of the assessment is questioned. The amendment does not "give back" any collected tax, it only changes the procedure for qualifying for an exemption. Even the language in the *Huza* opinion suggests that:

> The situation might well be treated differently if there were any question about the validity of [the] ordinances . . ., or if some duty existed on the part of the city to refund part of the taxes. Respondent has not challenged the validity of the ordinances, nor has he claimed that the city has any duty to return the increased taxes collected under the ordinances. See *State ex rel. Larson v. Giessel*, 266 Wis. 547, 64 N.W.2d 421 (1954). The precise limits of the application of this rule we do not decide. We are holding only that, where a tax ordinance has been previously validly enacted, it cannot be repealed retroactively, and the tax money heretofore collected validly cannot be refunded simply on the basis of the retroactive repeal.

*Yakima v. Huza, supra* at 359.

Here, Scarsella is not challenging the enactment, nor the fact that some tax was due. It is challenging the amount as determined by the Department, or, stated differently, the validity of the amount of the assessment. Scarsella paid over $200,000 under protest to stop the accrual of interest. We do not agree with the Department that in these circumstances the tax paid "under protest" was "collected" within the meaning of the *Huza* case. To affirm the Department's theory would bring about an absurd result. It would allow a taxpayer who does not pay the assessment and permits interest to continue to accrue on the unpaid

amount to challenge in a case such as this, but would disallow a challenge by the taxpayer who decides to pay and then challenge. The Department had no vested rights to the special fuel tax paid under protest.

The Department made an error of law by not applying the statute as amended by Laws of 1988, ch. 51, § 1 to the case at bar. The Department's amended findings of fact, conclusions of law, and proposed order were clearly based on former RCW 82.38.140[5] and its decision is therefore an

---

[5][Conclusion of law 6:] "Every special fuel user shall keep for a period of not less than three years open to inspection at all times during the business hours of the day to the department or its authorized representatives, a complete record of all special fuel purchased or received and all of such products sold, delivered or used by them, such records to show:

"(a) the date of each receipt;

"(b) the name and address of the person from who purchased or received;

"(c) the number of gallons received at each place of business or place of storage in the state of Washington;

"(d) the date of each sale or delivery;

"(e) the number of gallons sold, delivered, or used for taxable purposes;

"(f) the number of gallons sold, delivered, or used for any purpose not subject to the tax imposed herein;

"(g) the name, address, and special fuel license number of the purchaser if the special fuel tax is not collected on sale or delivery; and

"(h) the inventories of special fuel on hand at each place of business at the end of each month pursuant to RCW 82.38.140(1)."

[Conclusion of law 7:] "All special fuel users using special fuel in vehicles licensed for highway operation shall maintain detailed mileage records on an individual vehicle basis. Such operating records shall show both on–highway and off–highway usage of special fuel on a daily basis for each vehicle pursuant to RCW 82.38.140(2)."

[Conclusion of law 8:] "Every special fuel user shall keep, in addition to his records of deliveries into motor vehicles, a complete record as prescribed by the department of the total gallons of special fuel used for other purposes during each month and the purposes for which said special fuel was used pursuant to RCW 82.38.140."

[Conclusion of law 10:] "The user shall maintain adequate accurate records of the operation off the highway including the miles traveled and fuel used to establish to the satisfaction of the department that the user is entitled to exemption for off–highway use of fuel. Claims based on estimates or percentages of miles traveled, hours of operation, fuel used, etc., will not be accepted to support claims for off–highway use pursuant to WAC 308–77–020."

[Conclusion of law 17:] "The evidence of the licensee, Scarsella Brothers, Inc., fails to overcome the presumptions identified in RCW 82.38.260 as it failed to maintain adequate accurate records of its delivery of special fuel into the supply

error of law because the agency applied an inappropriate legal standard. The Department rejected Scarsella's proffered evidence by citing WAC 308–77–020 in conclusion of law 10.[6] This WAC is obsolete in part as it is based on the former statute.

The Department contends that even if it erred by not applying the statute as amended, Scarsella's evidence does not satisfy its burden of proof as to the number of gallons of special fuel used off–highway. The position taken by the Department throughout the administrative process is that without detailed records in the form the Department expects, Scarsella is required to pay on *all* special fuel purchased regardless of other evidence that the taxpayer may, and did, present because it did not rebut the presumption. This results in a clearly excessive assessment as the State acknowledges that some special fuel was consumed by Scarsella's off–road equipment.

The State's position elevates the record–keeping provisions of the statute to a prerequisite for an exemption. The record–keeping statute does not demand the exacting records required by the Department. While RCW 82.38.260 does create a rebuttable presumption that all special fuel is consumed by on–highway vehicles, the statute also states in part: "For the purpose of enforcing the provisions of this chapter it shall be presumed that all special fuel delivered to . . . a special fuel user . . . [is] consumed in the propulsion of motor vehicles on the highways of this state, *unless the contrary is established by satisfactory evidence.*" (Italics ours.) In addition, RCW 82.38.170(3) states that any assessment made by the Department because of a deficiency "shall be presumed to be correct, and in any case where the validity of the assessment is drawn in question, the burden shall be on the person who challenges the

---

tanks of motor vehicles, the delivery of special fuel into the supply tanks of off the highway equipment and the number of miles traveled by its trucks on and off of the highway."

[6]See footnote 5.

assessment to establish by a *fair preponderance of the evidence* that it is erroneous or excessive as the case may be." (Italics ours.)

The Department's position is it may disregard evidence presented that it unjustifiably deems to be unsatisfactory. Although the Department recognizes that some portion of the fuel Scarsella consumed was used in off–road vehicles, it refused to make any provision for credit under an alternate theory. While this court may not substitute its judgment for that of the agency in terms of the ultimate result, after a reading of the administrative record, it is obvious that the Department is taking a hard line to the reporting requirements so as to exclude the possibility of any other evidence to rebut the presumption. The statute does not specify the precise "records" that must be kept as a prerequisite to allocation. Whether Scarsella's evidence meets its burden of proving off–road use remains to be decided under the entire statutory scheme. We cannot decide this issue here because the case was decided solely on the basis that Scarsella did not comply with the reporting procedures of former RCW 82.38.140.

Because the Department applied the inappropriate legal standard by using the former statute, the case must be reversed and remanded to the Superior Court with directions that it be further remanded to the Department for a redetermination of the tax and penalty, RCW 82.38.170(4), if any is due, in light of the statute as amended. *Washington Pub. Employees Ass'n v. Community College Dist. 9,* 31 Wn. App. 203, 642 P.2d 1248 (1982); *see also* RCW 34.04.130(6).

COLEMAN, C.J., and PEKELIS, J., concur.

Review denied at 113 Wn.2d 1004 (1989).