[No. 16799-9-II. Division Two. April 20, 1995.]

SUNRISE EXPRESS, INC., *Appellant*, v. THE DEPARTMENT
OF LICENSING, *Respondent*.

*Hugh Potter* and *Blair Schaefer Hutchison (Dana Taylor and Hagen Dye & Hirschy P.C.,* of counsel), for appellant.

*Christine O. Gregoire, Attorney General,* and *James R. Silva, Assistant,* for respondent.

FLEISHER, J. — The Department of Licensing assessed a special fuel tax deficiency against Sunrise Express, Inc. (Sunrise) based on a statutory presumption regarding the rate of fuel consumption in the absence of specific records. The Superior Court affirmed the assessment and Sunrise appeals. We hold the evidence presented by Sunrise is sufficient to overcome the statutory presumption. Accordingly, we reverse and remand for further proceedings.

## FACTS

Sunrise is a Washington corporation that operates commercial vehicles in interstate commerce. It is a user of special fuel, subject to the special fuel tax imposed under RCW 82.38.030. Sunrise makes monthly tax payments to the Department of Licensing (the Department), rather than at the pump upon purchase of the fuel. RCW 82.38.090, .150. To ensure payment of the proper tax amount, special fuel users are subject to specific record-keeping requirements under RCW 82.38.140.

The Department conducted an audit of Sunrise to verify the tax amounts reported from February 1, 1987, to September 30, 1989. Sunrise submitted records detailing the total mileage its entire fleet traveled during the audit period. Although Sunrise did not submit mileage records by individual vehicle, the Department accepted the total mileage

amounts. However, Sunrise could not submit records of its fuel consumption. A water tank had burst, flooding its records storage area, and destroying the fuel consumption records.

Because of Sunrise's lack of fuel consumption records, the Department applied a statutory presumption that Sunrise's vehicles consumed fuel at the rate of 4.0 miles per gallon. *See* RCW 82.38.060. Based on the total mileage submitted by Sunrise, the Department concluded that Sunrise owed $15,225.94 in additional fuel taxes.

Sunrise challenged the use of this statutory presumption before an administrative law judge (ALJ). To rebut the presumption, Sunrise presented uncontroverted expert testimony regarding its fleet of trucks and the trucking industry in general. The expert testified that in the early 1970's when the 4 miles per gallon presumption was enacted, trucking fleets averaged between 3.8 and 4.2 miles per gallon, and that improvements in truck design since then have significantly increased fuel efficiency. Sunrise's expert further testified that he has spent 12 years working with Sunrise to design a fleet that would operate at between 5.5 and 6.0 miles per gallon.

The ALJ ruled that Sunrise's claim that its vehicles traveled more than 4 miles per gallon was based upon a variety of hypotheses, suppositions, and presumptions. This formula, according to the ALJ, contained too many variables to overcome the prima facie presumption of RCW 82.38.060.

The Department issued a final order adopting the ALJ's conclusions. Sunrise appealed the Department's order to Clark County Superior Court. The court found that the evidence was not sufficiently specific to approximate records of individual vehicles and affirmed the decision. Sunrise appealed. We hold Sunrise's evidence is sufficient to overcome the statutory presumption. Accordingly, we reverse and remand for further proceedings.

## ANALYSIS

The sole issue on appeal is whether Sunrise presented sufficient evidence to rebut the statutory presumption that its vehicles had a fuel consumption rate of 4 miles per gallon.

Findings of fact under the Administrative Procedure Act must be supported by substantial evidence. *Olmstead v. Department of Health*, 61 Wn. App. 888, 893, 812 P.2d 527 (1991); RCW 34.05.570(3)(e). In the present case, however, Sunrise does not challenge any of the findings of fact made by the ALJ. Instead, Sunrise maintains that the findings of fact as a whole are sufficient to overcome the statutory presumption, and therefore challenges the legal conclusion of the judge.

Challenges to an administrative agency's conclusions of law are reviewed under the error of law standard contained in RCW 34.05.570(3)(d), namely that "[t]he agency has erroneously interpreted or applied the law". When errors of law are alleged, the court may substitute its judgment for that of the agency. However, the court will accord substantial weight to the agency's view of the law. *Jensen v. Department of Ecology*, 102 Wn.2d 109, 113, 685 P.2d 1068 (1984).

Under the special fuel tax act, a special fuel tax user pays tax based on the amount of fuel consumed during operations in each particular state, instead of paying the tax at the pump upon purchase. RCW 82.38.030, .090, .140. Special fuel users must maintain specific records, including the number of miles traveled in each state on an individual vehicle basis, the number of gallons purchased, the location and date purchased, and the special fuel license number of the purchaser. RCW 82.38.140. The Department uses these records to verify the user's tax liability. Failure to keep proper records is a gross misdemeanor under RCW 82.38.270, subjecting the user to a fine of no more than $1,000 and/or 1 year in jail.[1]

In cases where the necessary records are unavailable, RCW 82.38.060 provides, in part:

> In the absence of records showing the number of miles actually operated per gallon of special fuel consumed, it shall be *prima facie presumed* that not less than one gallon of special fuel was

---

[1]The Department may also impose a penalty of 10 percent of the amount due plus interest, if the special fuel user fails to pay taxes on time. RCW 82.38.170. The Department has the discretion to mitigate or waive penalties arising from unpaid or underpaid taxes. WAC 308-77-215. The Department originally instituted a penalty in this case, but subsequently waived its imposition.

consumed for every: (1) Four miles traveled by vehicles over forty thousand pounds gross vehicle weight . . ..

(Italics ours.) RCW 82.38.060.[2]

■■ A presumption, however, is not evidence and its efficacy is lost when the other party adduces credible evidence to the contrary. *In re Indian Trail Trunk Sewer Sys.*, 35 Wn. App. 840, 843, 670 P.2d 675 (1983), *review denied*, 100 Wn.2d 1037 (1984). A presumption may be overcome by competent rebutting testimony from either interested or disinterested witnesses. *In re Estate of Davis*, 23 Wn. App. 384, 386, 597 P.2d 404, *review denied*, 92 Wn.2d 1026 (1979).

In the present case, Sunrise challenges the conclusion of the ALJ that:

> The formula advanced by [the petitioner] to support its claim that during the audit period its vehicles traveled more than four miles for each gallon of special fuel consumed is based upon a variety of hypotheses, suppositions and presumptions. This formula contains too many variables to overcome the prima facie presumptions of RCW 82.38.060(1). The evidence of the petitioner is insufficient to overcome this statutory presumption.

To rebut the presumption, Sunrise presented uncontroverted expert testimony regarding its fleet of trucks and the trucking industry. Sunrise's expert testified that he has spent 12 years working with Sunrise to design a fleet that would operate at between 5.5 and 6.0 miles per gallon. Most of Sunrise's fleet during the audit period consisted of 1- to 3-year-old trucks that incorporated fuel saving changes in both engine and transmission technology. Sunrise had installed aerodynamic hoods and fuel efficient radial tires on its fleet. Speed governors were installed in the trucks, limiting their top speed to 62 miles per hour.

The expert conducted computer simulated runs to test engine efficiency. Although the simulations did not take into

---

[2]The Legislature enacted this 4-miles-per-gallon presumption in 1971 for all vehicles. Former RCW 82.38.060 (Laws of 1971, 1st Ex. Sess., ch. 175, § 7). Since then significant advances have been made in fuel saving technology for all vehicles. In 1989, the Legislature recognized these improvements by creating differing presumption amounts based on the weight of the vehicle. *See* RCW 82.38.060 (Laws 1989, ch. 142, § 1). However, the 4-miles-per-gallon presumption was retained for the heaviest trucks, including Sunrise's.

account bad weather, the expert tried to counterbalance this factor with other assumptions including maximum trailer height, maximum weight load, and 100 percent use of air conditioning. The computer tests produced consumption rates between 5.47 and 6.0 miles per gallon, and averaged 5.89 miles per gallon. The tests had a 20 percent margin of error, which would produce a maximum consumption rate range of between 4.38 and 7.2 miles per gallon. Additionally, the expert conducted computer simulated runs based on travel in the Rocky Mountains, and obtained an average consumption rate of 5.4 miles per gallon. The expert conducted all of these simulated test runs on trucks using Cummins engines, which comprise 70 percent of Sunrise's fleet. The expert testified that the other 30 percent of the fleet should achieve a similar level of performance.

Ninety-five percent of Sunrise's business during the audit period was conducted between Los Angeles and Seattle. Between 1987 and 1989, Sunrise conducted monitored 650-mile trucking runs between Portland, Oregon, and Corning, California. These runs averaged 5.8 miles per gallon.

The Department did not controvert any of this testimony. In fact, the Department conceded to the trial court that:

> there was plenty of evidence presented by Sunrise Express that their fleet mileage should have been something other than 4.0 miles per gallon, and should have been somewhat higher than 4.0 miles per gallon.

The Department would apparently require Sunrise to conclusively demonstrate its exact fuel consumption rate before the presumption can be overcome. To support its position, the Department argues that the monitoring runs between Portland and California are not sufficient evidence because the runs were not conducted in Washington. Furthermore, it argues that not all types of Sunrise's vehicles were tested, although the expert testified that the same results would have occurred.

The position of the Department is contrary to the notion of a presumption. Sunrise need not conclusively demonstrate its actual consumption to overcome the statutory presumption; it need only present sufficient evidence that its con-

sumption rate is in excess of 4 miles per gallon. *See Indian Trail Trunk Sewer*, 35 Wn. App. at 843.

The Department appears to have adopted a position similar to its position in *Scarsella Bros., Inc. v. Department of Licensing*, 53 Wn. App. 882, 771 P.2d 760, *review denied*, 113 Wn.2d 1004 (1989). Although that case concerned an unrelated statutory presumption regarding exempt off-highway consumption of special fuel, the court stated, "it is obvious that the Department is taking a hard line to the reporting requirements so as to exclude the possibility of any other evidence to rebut the presumption." *Scarsella*, at 893. Unlike in *Scarsella*, where the Department even refused to consider evidence, it did consider Sunrise's evidence in this case. However, the Department still is taking "a hard line" by requiring that Sunrise conclusively demonstrate its actual fuel consumption. This is not the nature of a presumption. Accordingly, we hold Sunrise has presented sufficient evidence of the average mileage of its fleet to overcome the statutory presumption.

 In its brief, the Department concedes that Sunrise made a persuasive case that its fleet efficiency was greater than 4 miles per gallon. But it argues that because Sunrise did not present evidence that was sufficiently specific with respect to the fuel consumption of each individual vehicle, the Department correctly applied the statutory presumption for determining fuel consumption for the entire fleet. The Department appears to base this argument on the requirement in RCW 82.38.140(2)(a) that special fuel users maintain detailed mileage records on an individual vehicle basis. The Department's reliance on the record-keeping statute is misplaced. RCW 82.38.140 does not address the procedure for establishing the fuel consumption rate where the taxpayer cannot comply with the record-keeping requirements. That procedure is found in RCW 82.38.060.

A close reading of RCW 82.38.060 does not support the Department's contention that the statutory presumption is dependant on an individual vehicle rule. The section states in part:

> In the event the tax on special fuel imported into this state in the fuel supply tanks of motor vehicles for taxable use on

Washington highways can be more accurately determined on a mileage basis the department is authorized to approve and adopt such basis. When a special fuel user imports special fuel into or exports special fuel from the state of Washington in the fuel supply tanks of motor vehicles, *the amount of special fuel consumed in such vehicles* on Washington highways shall be deemed to be such proportion of *the total amount of such special fuel consumed in his entire operations* within and without this state as the total number of miles traveled on the public highways . . .. In the absence of records showing the number of miles actually operated per gallon of special fuel consumed, it shall be prima facie presumed that not less than one gallon of special fuel was consumed for every: (1) Four miles traveled by vehicles over forty thousand pounds gross vehicle weight . . ..

(Italics ours.) RCW 82.38.060.

Under this statute, a user's tax liability is based on the total amount of fuel consumed in its vehicles on Washington highways as a proportion of the user's entire operations, not on the operation of each individual vehicle.

█ The Legislature adopted the statutory presumption to address situations where the user can establish the rate of fuel consumption independent of specific records. In construing a statute, the court attempts to give effect to the plain meaning of the words used, and each provision is viewed in relation to the other provisions as a whole. *State v. Sommerville*, 111 Wn.2d 524, 531, 760 P.2d 932 (1988). To read the statutory scheme as the Department proposes would prevent Sunrise from overcoming the presumption without evidence of exactly those records it does not have.

Sunrise presented evidence of the average fuel consumption of its vehicles, the uniformity of fuel consumption among the vehicles in its fleet, and the total miles traveled. This is sufficient to overcome the statutory presumption. The statutory scheme does not require Sunrise to rebut the presumption on an individual vehicle basis.

Accordingly, we reverse and remand to the Superior Court with instructions to further remand to the Department for a determination of Sunrise's fuel consumption rate.

HOUGHTON, A.C.J., and BRIDGEWATER, J., concur.