# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION  II

| | |
|---|---|
| ADAM ROSEN, an individual; DAVID ROSEN, an individual; and MATTHEW ROSEN, an individual; individually and derivatively on behalf of ROSEN SUPPLY COMPANY, INC., a Washington Corporation,<br><br>Appellants,<br><br>v.<br><br>HARVEY ROSEN, an individual; and DIANNE ARENSBERG, an individual,<br><br>Respondents,<br><br>ROSEN SUPPLY COMPANY, INC., a Washington corporation,<br><br>Defendants. | No.  52945-9-II<br><br><br><br><br><br><br><br><br><br><br>UNPUBLISHED OPINION |

WORSWICK, J. — Adam, David, and Matthew Rosen (the nephews) appeal the trial court's order denying their motion for summary judgment and granting summary judgment and awarding attorney fees and costs to their aunt and uncle, Harvey Rosen and Dianne Arensberg. The nephews argue that the trial court erred by concluding that Rosen Supply Company Inc.'s (RSC) articles of incorporation did not sufficiently rebut the statutory presumption that shareholders vote on a per share basis. The nephews further argue that the trial court erred by concluding that Harvey and Dianne were entitled to mandatory indemnification and by awarding attorney fees and costs.

We hold that the trial court did not err by denying the nephews' motion for summary judgment and granting summary judgment in favor of Harvey and Dianne and that Harvey and Dianne are entitled to mandatory indemnification. However, we also hold that the trial court erred by awarding Harvey and Dianne attorney fees without segregating expenses incurred in defense of the nephews' claims from expenses incurred in prosecution of Harvey and Dianne's counterclaims. Accordingly, we affirm the trial court's order granting summary judgment and remand to the trial court for entry of findings and conclusions addressing the issue of fee segregation.

FACTS

RSC is a plumbing supply company operating in the Puget Sound area. Max and Sara Rosen, who were Harvey and Dianne's parents, formed RSC as a general partnership in 1946. When RSC was incorporated in 1978, there were five shareholders—Max, Sara, and their three children Harvey, Dianne, and Byron. All five shareholders served on the board of directors. Byron died in 1979. RSC remains a family business, owned by Harvey, Dianne, Harvey's son Devin, and Byron's sons Adam, David, and Matthew.

RSC's original articles of incorporation have never been amended. Art. II § 3(C) of RSC's articles of incorporation provides in part, "The corporation shall not be entitled to vote, either directly or indirectly, on any shares of its own stock which it may hold." Clerk's Papers (CP) at 66. Art. VIII § 4 provides:

> Any contract, transaction, or act of the corporation or of the directors or of any officers of the corporation which shall be ratified *by a majority or a quorum of the stockholders of the corporation* at any annual meeting or any special meeting called for such purpose, shall insofar as permitted by law, be as valid and as binding as though ratified by every stockholder of the corporation.

CP at 70 (emphasis added).

When RSC incorporated, it issued 1,000 outstanding shares of stock: 150 shares each to Max and Sara, 250 shares each to Harvey and Byron, and 200 shares to Dianne. After Byron passed away in 1979, RSC bought back his 250 shares and later reissued the shares pro rata to the remaining shareholders. As a result, Max and Sara each owned 200 shares, Harvey owned 333.333 shares, and Dianne owned 266.667 shares.

In 1989 the four shareholders signed a revised stock purchase agreement (1989 SPA) providing that if a shareholder wanted to sell her shares, or if a shareholder died, the remaining shareholders or RSC must purchase those shares. The 1989 SPA expressed a "desire to preserve a majority shareholder position in the Corporation" for Harvey and Dianne. The 1989 SPA provided that Harvey and Dianne "shall have the right to purchase from each other, or from their respective estates, all or a portion of the stock owned by the other," with the stated purpose being "to assure HARVEY ROSEN and DIANNE ARENSBERG a fifty-one (51%) percent shareholder position in the Corporation throughout the remainder of their lives." CP at 79. The 1989 SPA also permitted Max and Sara to gift a portion of their shares to their grandchildren.

Max and Sara established a grandchildren's stock ownership trust, naming Harvey and Dianne as the co-trustees of the trust. As co-trustees they held "the voting rights to the stock held in trust," entitling them each "to vote one-half of the stock." CP at 388. The trust provided for distribution of 50 shares to each of Max and Sara's grandchildren, conditioned on the grandchild's completion of four years of continuous service with RSC. Byron's son, Adam, immediately qualified and received his gift of 50 shares. Eventually, four other grandchildren

qualified to receive a gift of 50 shares from the trust—Aaron, David, Matthew, and Devin.[1]

When the trust was ultimately terminated, the 150 remaining shares were distributed pro rata to

Adam, Aaron, David, Devin, and Matthew, resulting in each of them owning 80 shares.

In 2012, Aaron chose to have RSC redeem his 80 shares. As a result, six people currently

own the 920 outstanding shares: Harvey owns 333.333 shares (36.2% interest), Dianne owns

266.667 shares (29% interest), and Adam, David, Matthew, and Devin each own 80 shares (8.7%

interest).

In 2012, Harvey and Dianne, who were in their 70s, began expressing a desire to exit

RSC and sell their portion of the company to Adam, David, Matthew, and Devin. In May 2017,

Harvey and Dianne sent an offer for the purchase of Harvey and Dianne's shares. But the

nephews rejected the offer. Harvey and Dianne ultimately revoked their offer and began to

explore a third-party sale of RSC's assets or a potential merger. In November 2017, the nephews

made an offer to buy Harvey and Dianne's shares, but Harvey and Dianne rejected the offer as

too low.

In November 2017, Harvey and Dianne called a special joint meeting of the board of

directors and shareholders. The notice called for consideration of the following proposals:

> (i)      To remove three directors from the Board of Directors of the Company;
>
> (ii)     To consider and vote on a resolution . . . by the shareholders to approve amended and restated Bylaws of the Company, including but not limited to setting the number of directors of the Company at three (3);
>
> (iii)    To elect three (3) directors to the Company's Board of Directors.

---

[1] Aaron and Devin are Harvey's sons.

No. 52945-9-II

CP at 204.

At the special meeting, Harvey and Dianne disagreed with the nephews as to the proper voting scheme. Harvey and Dianne contended that voting would be on a per share basis, consistent with the Washington Business Corporation Act, Title 23B RCW. The nephews maintained that voting should occur per capita. The meeting proceeded to vote on directors, with the nephews abstaining. As a result of the votes, Matthew and David were removed from the board. The shareholders also voted to amend RSC's bylaws. The nephews again abstained in protest of the per share vote.

At the conclusion of the special meeting, the nephews served Harvey and Dianne with a summons and complaint for a lawsuit. The nephews subsequently filed a lawsuit against Harvey and Dianne, individually and derivatively on behalf of RSC, for injunctive relief and damages, alleging breach of fiduciary duties and anticipatory breach of contract, and seeking declaratory judgment that the resolutions passed at the special meeting were null and void. Harvey and Dianne filed counterclaims for declaratory relief, permanent injunctive relief, and damages.

The parties filed cross-motions for partial summary judgment on, among other things, whether RSC's articles of incorporation displaced Washington's statutory one-share-one-vote presumption. The nephews argued that RSC's articles of incorporation sufficiently overcame the statutory presumption and established per capita voting. Harvey and Dianne argued that the articles were consistent with Washington's statutory presumption and the presumption had not been overcome. The trial court agreed with Harvey and Dianne and granted their motion for summary judgment and denied the nephews' motion.

5

Following the trial court's ruling, the remaining issues were whether the nephew's claims were frivolous and whether and to what extent Harvey and Dianne were entitled to mandatory indemnification by RSC. The parties filed a second set of cross-motions on the remaining issues. The trial court found that the lawsuit was against Harvey and Dianne in their capacity as directors of RSC, and concluded that they were entitled to mandatory indemnification for their attorney fees and costs under RCW 23B.08.520.

The trial court awarded attorney fees to Harvey and Dianne, to be indemnified by RSC, but found that the requested amount of $611,302.24 was excessive. After applying the lodestar method, the trial court made downward adjustments to nearly every category of fees requested. The court found that counsel had duplicated some effort and had also spent an excessive amount of hours on some tasks in each category of fees. The trial court also reduced the total fee award by $15,000.00 spent on Harvey and Dianne's unsuccessful counterclaims. As a result, the trial court awarded a total of $469,387.24 in fees and costs.

The nephews appeal.

ANALYSIS

I. VOTING SCHEME

The nephews argue that the trial court erred by granting Harvey and Dianne's motion for summary judgment and denying the nephews' cross-motion for summary judgment on the issue of shareholder voting. Specifically, they contend that RSC's articles of incorporation provide for per capita shareholder voting, rebutting the statutory presumption of per share voting. We disagree.

6

A.      *Legal Principles*

We review legal questions and an order of summary judgment de novo, performing the

same inquiry as the trial court. *Sunnyside Valley Irrigation Dist. v. Dickie*, 149 Wn.2d 873, 880,

73 P.3d 369 (2003); *Folsom v. Burger King*, 135 Wn.2d 658, 663, 958 P.2d 301 (1998). In

reviewing summary judgment orders, we consider the facts and all reasonable inferences from

them "in the light most favorable to the nonmoving party." *Hertog v. City of Seattle*, 138 Wn.2d

265, 275, 979 P.2d 400 (1999). Summary judgment is appropriate where "the pleadings,

affidavits, and depositions establish that there is no genuine issue of material fact and that the

moving party is entitled to judgment as a matter of law." *Jones v. Allstate Ins. Co.*, 146 Wn.2d

291, 300-01, 45 P.3d 1068 (2002); CR 56(c).

A corporation's governing documents are interpreted in accordance with accepted rules

of contract interpretation. *Roats v. Blakely Island Maint. Comm'n, Inc.*, 169 Wn. App. 263, 273-

74, 279 P.3d 943 (2012). Contract interpretation is a question of law that we review de novo.

*Dave Johnson Ins. v. Wright*, 167 Wn. App. 758, 769, 275 P.3d 339 (2012). "The purpose of

contract interpretation is to determine the parties' intent." *Roats*, 169 Wn. App. at 274.

Washington courts follow the context rule of contract interpretation, which allows a court, while

viewing the contract as a whole, to consider extrinsic evidence to determine the parties' intent.

*Roats*, 169 Wn. App. at 274. We consider a corporation's governing documents, including

articles of incorporation and bylaws, "correlated documents" to be construed together as a whole.

*Roats*, 169 Wn. App. at 274.

Contractual language generally must be given its ordinary, usual, and popular meaning. *Jensen v. Lake Jane Estates*, 165 Wn. App. 100, 105, 267 P.3d 435 (2011). "An interpretation of a contract that gives effect to all provisions is favored over an interpretation that renders a provision ineffective." *Snohomish County Pub. Transp. Benefit Area Corp. v. FirstGroup Am., Inc.*, 173 Wn.2d 829, 840, 271 P.3d 850 (2012). And "'[w]here one construction would make a contract unreasonable, and another, equally consistent with its language, would make it reasonable, the latter more rational construction must prevail.'" *Better Fin. Solutions, Inc. v. Transtech Elec., Inc.*, 112 Wn. App. 697, 712 n.40, 51 P.3d 108 (2002) (quoting *Byrne v. Ackerlund*, 108 Wn.2d 445, 453-54, 739 P.2d 1138 (1987)).

B.      *Interpreting RSC's Articles of Incorporation*

RCW 23B.07.210(1) provides, in relevant part, "[U]nless the articles of incorporation *provide otherwise*, each outstanding share, regardless of class, is entitled to one vote on each matter voted on at a shareholders' meeting. Only shares are entitled to vote." (Emphasis added.) Although no Washington case discusses presumptions under the Washington Business Corporation Act, generally the burden of rebutting a statutory presumption lies with the party attempting to rebut the presumption. *See Morgan v. PeaceHealth, Inc.*, 101 Wn. App. 750, 766, 14 P.3d 773 (2000).

Here, the parties agree that the burden of establishing that the articles of incorporation "provide[d] otherwise" lies with the nephews. However, they dispute what quantum of evidence is necessary to rebut the statutory presumption of per share voting. Harvey and Dianne contend that the nephews carry a "heavy burden" and must show "a clear and express intent to displace the statutory default rule." Br. of Resp't at 25. The nephews are less explicit, but imply that a

mere preponderance of the evidence is sufficient. Washington courts have not previously established a heightened burden of proof to rebut the statutory presumptions of the Washington Business Corporation Act. We decline to do so for the first time today.

"It is the general rule that parties are presumed to contract with reference to existing statutes, and a statute which affects the subject matter of a contract is incorporated into and becomes a part thereof." *Wagner v. Wagner*, 95 Wn.2d 94, 98, 621 P.2d 1279 (1980) (citations omitted). "A presumption, however, is not evidence and its efficacy is lost when the other party adduces credible evidence to the contrary." *Sunrise Express, Inc. v. Dep't of Licensing*, 77 Wn. App. 537, 541, 892 P.2d 1108 (1995). A statutory presumption may be overcome by competent rebutting evidence. *Sunrise Express*, 77 Wn. App. at 541. Therefore, we must turn to the evidence presented to determine whether it sufficiently overcomes the statutory presumption.

The nephews argue that our analysis "should begin and end with Article VIII § 4," which states that a contract, transaction, or act of RSC shall be ratified "by a majority or a quorum of the stockholders of the corporation." Br. of Appellant at 25 (emphasis omitted) (quoting CP at 70). The nephews contend that the provision's use of "stockholders" instead of "shares" is sufficient to show that RSC's articles of incorporation "provided otherwise" to rebut the statutory presumption of per share voting in favor of a per capita voting scheme. Br. of Appellant 25, 27. We disagree.

Our Supreme Court interpreted similar language in *State v. Horan*, 22 Wash. 197, 60 P. 135 (1900). There, our Supreme Court interpreted a statute which provided that "[i]t shall be competent, at any time, for *two-thirds of the stockholders* of any corporation organized under its chapter to expel any trustee from office and to elect another to succeed him" as meaning holders

9

of two-thirds of the stock. *Horan*, 22 Wash. at 200 (emphasis added). The nephews contend that *Horan* is distinguishable because, there, our Supreme Court sought to harmonize conflicting provisions within the statute. The nephews contend that no such internal conflict exists in RSC's articles of incorporation. They are incorrect.

Article VIII § 4 provides for ratification "by a majority *or a quorum* of the stockholders." CP at 70 (emphasis added). "Quorum" is not specifically defined within RSC's articles of incorporation or bylaws, therefore, we presume the drafters incorporated the statutory definition of quorum. *Wagner*, 95 Wn.2d at 98. At the time of RSC's incorporation, former RCW 23A.08.290 (1965) provided:

> Unless otherwise provided in the articles of incorporation, *a majority of the shares entitled to vote, represented in person or by proxy, shall constitute a quorum* at a meeting of shareholders. If a quorum is present, the affirmative vote of the majority of the shares represented at the meeting and entitled to vote on the subject matter shall be the act of the shareholders, unless the vote of a greater number or voting by classes is required by this title or the articles of incorporation or bylaws.

(Emphasis added.) We favor a contract interpretation that gives effect to all provisions therein, with no portion rendered meaningless or superfluous. *Snohomish County Pub. Transp. Benefit Area Corp.*, 173 Wn.2d at 840; *G-P Gypsum Corp. v. Dep't of Revenue*, 169 Wn.2d 304, 309, 237 P.3d 256 (2010). Additionally, Article II § 3(C) clearly references voting by shares by stating, "The corporation shall not be entitled to vote, either directly or indirectly, *on any shares* of its own stock which it may hold." CP at 66 (emphasis added).

We may also consider all of RSC's governing documents. *See Roats*, 169 Wn. App. at 274. Section V(1)(f) of RSC's 1978 bylaws refer to the voting power of *shares*. And the 1989

SPA clarifies RSC's intent that Harvey and Dianne maintain their majority shareholder position.[2] But a majority shareholder position would be valueless if that position was not tied to voting power, and we favor a rational construction. *Better Fin. Solutions, Inc.*, 112 Wn. App. at 712 n.40.

Given our Supreme Court's longstanding interpretation in *Horan* of the language the nephews rely on, and considering the articles of incorporation and correlated documents as a whole, we hold that the nephews have failed to meet their burden to show that RSC's articles of incorporation sufficiently "provide otherwise" to rebut the statutory presumption of per share voting. Accordingly, we hold that the trial court did not err by denying the nephews' motion for summary judgment and granting summary judgment on the voting scheme issue in favor of Harvey and Dianne.

The nephews contend that even if we decline to reverse and order summary judgment in favor of the nephews, we should nonetheless hold that summary judgment in favor of Harvey and Dianne was not proper because the language of the articles is subject to more than one reasonable inference. "When a court relies on inferences drawn from extrinsic evidence, interpretation of a contract is a question of fact." *Viking Bank v. Firgrove Commons 3, LLC*, 183 Wn. App. 706, 711, 334 P.3d 116 (2014). However, because we can interpret the plain language of the articles of incorporation as a matter of law and hold that they do not displace the statutory

---

[2] The nephews also contend that section 12 of the SPA, which states that "[t]his Agreement may be altered, amended or terminated by a writing signed by the Corporation and all Stockholders," refers to voting by stockholders and supports their argument. CP at 81. However, that the SPA could be altered by an agreement signed by all stockholders is not relevant to the voting scheme articulated by the articles of incorporation. Section 12 could be enforceable under either scheme.

presumption of per share voting, summary judgment in favor of Harvey and Dianne was proper.[3]

Accordingly, we affirm.[4]

## II. MANDATORY INDEMNIFICATION

The nephews also argue that the trial court erred by concluding that Harvey and Dianne were entitled to mandatory indemnification. We disagree.

We review a party's entitlement to attorney fees as an issue of law de novo. *Bloor v. Fritz*, 143 Wn. App. 718, 747, 180 P.3d 805 (2008). Under RCW 23B.08.520, "a corporation shall indemnify a director who was wholly successful, on the merits or otherwise, in the defense of any proceeding to which the director was a party because of being a director of the corporation."[5] The justification for mandatory indemnification is that if a person is sued because the person is a director, the corporation should pay the resulting litigation expenses.

The nephews argue that Harvey and Dianne are not entitled to mandatory indemnification because they were not sued *because* of being directors of RSC, but rather because of their

---

[3] Harvey and Dianne contend the nephews should be precluded from making this argument on appeal because it is inconsistent with their request for relief before the trial court and in their opening brief on appeal. Harvey and Dianne conceded this argument at oral argument on appeal. The following day, Harvey and Dianne filed a motion to withdraw their concession made at oral argument. Because we hold that the trial court correctly granted Harvey and Dianne's motion for summary judgment as a matter of law, we do not address this issue.

[4] The nephews also argue that the trial court's rulings flowing from its conclusion that RSC shareholders vote on a per share basis should be reversed. Because we hold that the trial court did not err by entering summary judgment in favor of Harvey and Dianne on the issue of RSC's voting scheme, we also hold that the trial court's rulings flowing therefrom were proper.

[5] RSC's bylaws permit indemnification of directors "to the full extent permitted by the Washington Business Corporation Act," and the articles of incorporation do not limit a director's right to indemnification. CP at 217.

*actions* as shareholders of RSC. But the nephews' own filings do not support their theory. The nephews filed suit against Harvey and Dianne for breach of fiduciary duties "[a]s members and former members of the Board," and alleged that "Defendants have violated their duties and responsibilities to RSC and the individual Plaintiffs by taking ultra vires action in violation of RSC's governing rules, procedures, and principles, and/or by breaching their duties to RSC and the individual Plaintiffs." CP at 6, 8.

The nephews also argue that the trial court improperly ordered RSC to indemnify Harvey and Dianne because RSC was a nominal defendant in the proceedings. But a corporation and all of its shareholders are bound by the trial court's rulings in shareholder derivative actions. *Ross v. Bernhard*, 396 U.S. 531, 538, 90 S. Ct. 733 (1970) ("The claim pressed by the stockholder against directors or third parties is not his own but the corporation's. . . . The proceeds of the action belong to the corporation and it is bound by the result of the suit." (Internal quotations marks omitted)).

The parties stipulated that the trial court dismissed all of his claims against Harvey and Dianne. Accordingly, we hold that the trial court did not err by concluding that Harvey and Dianne were entitled to mandatory indemnification by RSC because they were wholly successful in defense of proceedings to which they were parties because of being directors of RSC.

### III. TRIAL ATTORNEY FEES & COSTS

The nephews also argue that the trial court abused its discretion in awarding attorney fees to Harvey and Dianne because Harvey and Dianne failed to segregate recoverable expenses and because the amount requested was unreasonable. We hold that the amount requested was

13

reasonable but that RCW 23B.08.520 entitles Harvey and Dianne to indemnification only for expenses incurred in the defense of the nephews' claims.

The question of a party's entitlement to attorney fees is an issue of law we review de novo. *Fritz*, 143 Wn. App. at 747. The reasonableness of an attorney fees award is a matter of the trial court's discretion and is reviewed for abuse of that discretion. *Fritz*, 143 Wn. App. at 747. "Courts must take an active role in assessing the reasonableness of fee awards, rather than treating cost decisions as a litigation afterthought." *Mahler v. Szucs*, 135 Wn.2d 398, 434, 957 P.2d 632 (1998) (emphasis omitted). Abuse of discretion is shown when the trial court's decision is unreasonable or based on untenable grounds. *Allard v. First Interstate Bank of Washington, N.A.*, 112 Wn.2d 145, 148, 768 P.2d 998, 773 P.2d 420 (1989). The trial court must create an adequate record for review showing a tenable basis for the fee award. *Loeffelholz v. Citizens for Leaders With Ethics & Accountability Now*, 119 Wn. App. 665, 690, 82 P.3d 1199 (2004).

A.      *Failure To Segregate*

Under RCW 23B.08.520 "a corporation shall indemnify a director who was wholly successful, on the merits or otherwise, *in th*e *defense of any proceeding* to which the director was a party because of being a director of the corporation." (Emphasis added.) The nephews contend that the operative term in the statute is "defense" and that Harvey and Dianne are only entitled to indemnification for legal expenses related to defending the nephews' claims against Harvey and Dianne and not their counterclaims. Harvey and Dianne respond that the operative phrase is "any proceeding," and that because all of the fees and expenses they incurred stemmed

from the same proceeding, they are entitled to total indemnification. We agree with the nephews.

We review the meaning of a statute de novo. The fundamental purpose in construing statutes is to ascertain and carry out the intent of the legislature, which we determine primarily from the statutory language. *In re Marriage of Schneider*, 173 Wn.2d 353, 363, 268 P.3d 215 (2011). When the language of a statute is unambiguous, we give effect to that language. *TracFone Wireless, Inc. v. Dep't of Revenue*, 170 Wn.2d 273, 281, 242 P.3d 810 (2010). "Under rules of statutory construction 'no part of a statute should be deemed inoperative or superfluous unless it is the result of obvious mistake or error.'" *In re Det. of Strand*, 167 Wn.2d 180, 189, 217 P.3d 1159 (2009) (quoting *Klein v. Pyrodyne Corp.*, 117 Wn.2d 1, 13, 810 P.2d 917, 817 P.2d 1359 (1991)).

Harvey and Dianne's interpretation of RCW 23B.08.520 would render the statute's use of "in the defense of" inoperative. Indeed, such an interpretation could transform a director's indemnification from a shield to a sword. Accordingly, we agree with the nephews and hold that under the unambiguous language of RCW 23B.08.520, a party is entitled to indemnification only for expenses incurred in the defense of a proceeding to which he is a party because of being a director of a corporation.

When attorney fees are recoverable for only some of a party's claims, an attorney fee award must properly reflect a segregation of the time spent on issues for which fees are authorized from time spent on other issues. *Loeffelholz*, 119 Wn. App. at 690. "This is true even

if the claims overlap or are interrelated." *Loeffelholz*, 119 Wn. App. at 690. But where the trial court finds that the claims are so related that no reasonable segregation of successful and unsuccessful claims can be made, the trial court is not required to segregate time. *Hume v. Am. Disposal Co.*, 124 Wn.2d 656, 673, 880 P.2d 988 (1994). A "court is not required to artificially segregate time . . . where the claims all relate to the same fact pattern, but allege different bases for recovery." *Ethridge v. Hwang*, 105 Wn. App. 447, 461, 20 P.3d 958 (2001).

Harvey and Dianne argue that their counterclaims arose from the same core set of facts as the nephews' complaint against them, and therefore, were so interrelated as to make segregation impossible. However, the trial court did not make any such finding. Although the trial court made detailed findings and conclusions supporting its fee award, it remained silent on the issue of segregation. Absent such findings, we do not have an adequate record on which to determine whether segregation was appropriate. Accordingly, we remand to the trial court for entry of findings and conclusions specifically addressing the issue of segregation.

B.      *Reasonableness*

The nephews also argue that the amount of attorney fees awarded was unreasonable. We disagree.

A trial court has broad discretion to determine the reasonableness of an attorney fee award. *Unifund CCR Partners v. Sunde*, 163 Wn. App. 473, 484, 260 P.3d 915 (2011). We will not disturb that determination unless the opposing party shows that the trial court manifestly abused its discretion. *Sunde*, 163 Wn. App. at 484.

16

Here, the trial court meticulously reviewed the fees requested, applying a lodestar method. The trial court made a reasonableness determination for each category of fees requested, reducing nearly all of the categories. The record reflects that the trial court carefully assessed the reasonableness of the hours expended by counsel and the hourly rate applied, and considered any duplicative or wasteful hours. That the nephews believe that the trial court should have reduced the fee award further is insufficient to show that the trial court manifestly abused its discretion. We hold that the trial court's attorney fee award was not a manifest abuse of discretion.

ATTORNEY FEES

Both parties request costs on appeal under RAP 18.1 and RCW 7.24.100. RCW 7.24.100 permits the court to award costs "as may seem equitable and just" in a declaratory-judgment action.

Harvey and Dianne also seek appellate attorney fees and costs under RCW 23B.08.520 and .540(1). RCW 23B.08.540(1) permits the court to order indemnification of a corporate director who is entitled to mandatory indemnification under RCW 23B.08.520. Accordingly, we award Harvey and Dianne appellate attorney fees and costs pursuant to RCW 23B.08.520, RCW 23B.08.540(1), and RCW 7.24.100.

In conclusion, we affirm the trial court's order granting Harvey and Dianne's motion for summary judgment, but we remand for entry of findings and conclusions on the issue of fee segregation. We also award Harvey and Dianne appellate attorney fees and costs.

No. 52945-9-II

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_____
Worswick, P.J.

We concur:

_____
Melnick, J.

_____
Cruser, J.