IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION ONE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 81377-3-I |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| SCOTT BRIAN REHMUS, | ) | UNPUBLISHED OPINION |
| DOB: 7/18/1992, | ) | |
| | ) | |
| Appellant. | ) | |
| | ) | |

VERELLEN, J. — A prosecutor breaches a plea agreement by undercutting its terms with conduct showing an objective intent to circumvent it. Because the prosecutor here told the court information consistent with the agreed sentence and allowed by statute or requested by the court, he did not breach the plea agreement.

Conditions of community custody must be crime related and may not be vague. Because no evidence shows a link between alcohol or businesses selling alcohol and Scott Rehmus's conviction for vehicular homicide, the condition precluding him from entering any business where alcohol is the "chief item of sale" must be stricken. And because the condition prohibiting Rehmus from associating with any person distributing a controlled substance invites arbitrary enforcement, it must be stricken as vague unless clarified on remand.

We accept the State's concessions regarding Rehmus's legal financial obligations.

Therefore, we affirm Rehmus's conviction and remand for further proceedings consistent with this opinion.

## FACTS

Scott Rehmus agreed to plea guilty to vehicular homicide in exchange for the State recommending an exceptional sentence of 65 months. Rehmus admitted he had tetrahydrocannabinol, the psychoactive ingredient in marijuana,[1] in his system at the time of the crash. At sentencing, the prosecutor explained he and the victim's family were "not happy with" the agreement but entered into it because of a dispositive defense motion the State was likely to lose.[2] The prosecutor asked the court to enter the agreed sentence. Without any prompting from the State, the court asked Rehmus whether his license was suspended when he struck the victim. Because Rehmus was driving with a suspended license, the court declined to impose the agreed-upon sentence and instead sentenced him to 84 months incarceration and 18 months of community custody.

Rehmus appeals.

## ANALYSIS

The State argues Rehmus failed to comply with RAP 5.2(a) by not filing his notice of appeal within 30 days of entry of the October 5, 2018 judgment and

---

[1] State v. Murray, 187 Wn.2d 115, 118, 384 P.3d 1150 (2016).
[2] Report of Proceedings (RP) (Oct. 5, 2018) at 3.

sentence, thus waiving his right to appeal. When interpreting and applying court rules, we read the rule's plain language in the context of related provisions.[3]

RAP 5.2(a) requires that an appellant file his notice of appeal no more than "30 days after the decision of the trial court that the party filing the notice wants reviewed,"[4] although, not all reviewable decisions are immediately appealable.[5] RAP 2.2(a) provides that a party has the right to appeal a final judgment. Whether a judgment was final is determined by its effect on the underlying action.[6] If a judgment "resolved the merits of a party's legal claims," then it was an appealable final judgment.[7]

The court sentenced Rehmus and signed the judgment and sentence on October 5. On October 19, Rehmus filed a CrR 7.8(b) motion for relief from judgment. He argued the court violated the real facts doctrine by relying upon an unproven crime, driving with a license suspended, to sentence him. The court heard the motion on October 26. Because the court raised the suspended license issue sua sponte during a colloquy with the State, it agreed Rehmus's motion was a timely objection and ordered an evidentiary hearing to determine whether Rehmus's driver's license was, in fact, expired when he committed vehicular

---

[3] Denney v. City of Richland, No. 97494-2, slip op. at 3 (Wash. May 7, 2020), http://www.courts.wa.gov/opinions/pdf/974942.pdf.

[4] Id. at 11 (citing RAP 2.2(a); RAP 5.2(a)).

[5] RAP 2.2; RAP 2.3.

[6] Denney, slip op. at 5.

[7] Id.

homicide. By accepting Rehmus's objection and scheduling an evidentiary hearing related to the original judgment, the trial court recognized its October 5 sentencing left a legal issue unresolved.[8] Thus, the December 10 evidentiary hearing was an extension of the original October 5 sentencing.

On December 10, the court held the hearing and denied Rehmus's objection, resolving all legal issues and entering a final judgment. Rehmus had 30 days to file a notice of appeal.[9] But Rehmus filed his notice of appeal on January 10, 2019, one day past the deadline set by RAP 5.2(a).[10]

RAP 18.8(b) restricts the circumstances when we can grant an extension of the period to file an appeal, but we balance Rehmus's state constitutional right to appeal against the strict application of filing deadlines.[11] "[A]n involuntary forfeiture of the right to a criminal appeal is never valid," so we never presume a defendant intentionally waived his right to appeal.[12] The State has the burden of demonstrating Rehmus understood his right to appeal and voluntarily, knowingly, and consciously waived it.[13] Because the State fails to show Rehmus intentionally

---

[8] See id. at 4 (explaining an appealable final judgment "'disposes of all issues in controversy'") (quoting State v. Taylor, 150 Wn.2d 599, 602, 80 P.3d 605 (2003).

[9] RAP 5.2(a).

[10] See RAP 18.6(a) (legal holidays and weekends are excluded from counting days only when the period of time allowed is less than seven days).

[11] State v. Kells, 134 Wn.2d 309, 314, 949 P.2d 818 (1998).

[12] Id. at 313, 314 (citing State v. Sweet, 90 Wn.2d 282, 581 P.2d 579 (1978)).

[13] Id. at 314 (citing Sweet, 90 Wn.2d at 287); State v. Cater, 186 Wn. App. 384, 392, 345 P.3d 843 (2015). The State relies on State v. Gaut, 111 Wn. App. 875, 46 P.3d 832 (2002), to argue we should deny Rehmus's appeal. But Gaut

waived his right to appeal merely by filing one day late, we will consider the merits of the appeal.

Rehmus argues the State breached the plea agreement. Whether the State breached a plea agreement is a question of law we review de novo.[14] As a contract between the State and the defendant, the State has a duty of good faith prohibiting it from implicitly or explicitly undercutting the agreement by conduct showing an objective intent to circumvent the agreement's terms.[15] We consider the prosecutor's conduct within the context of the entire record.[16] When speaking with the court, a prosecutor may "not hold back relevant information regarding the plea agreement'" and is not obliged to "enthusiastically make the sentencing recommendation."[17] The court is not bound by the parties' agreement.[18]

After the court convened the sentencing hearing, it called upon the prosecutor to explain the parties' plea agreement.

> It's an agreed exceptional sentence [of] 65 months. The [standard] range is 78 to 202 months. This is a case that I worked on with [prosecuting attorney] Ms. Goodell. We had a legal issue come up, and Ms. LaCross, for the defense, filed a motion, and Ms. Goodell

---

presumes, without addressing Kells or Sweet, that "the only review possible is some form of collateral attack on the judgment" because Gaut appealed outside the limit set by RAP 5.2(a). 111 Wn. App. at 880. We decline to follow the approach taken in Gaut and instead rely on our Supreme Court's holdings and reasoning in Kells and Sweet.

[14] State v. MacDonald, 183 Wn.2d 1, 8, 346 P.3d 748 (2015).

[15] Id. at 8.

[16] State v. Carreno-Maldonado, 135 Wn. App. 77, 83, 143 P.3d 343 (2006).

[17] Id. (quoting State v. Talley, 134 Wn.2d 176, 183, 949 P.2d 358 (1998)).

[18] RCW 9.94A.431(2).

and I looked at it and thought there was a very high risk that we would not succeed on that motion. . . .

And after talking with the family and after talking with the victim's husband, sister, parents, brother, multiple family members explaining to them why we did what we did, I believe they understand it but are clearly not happy with it. And neither [are] Ms. Goodell and I, but the legal issues kind of are what they are, unfortunately . . . .

. . . .

So, without a case to prosecute, Ms. Goodell and I came to this compromise with the defense, and I ask the court to follow it. It is for 65 months [and] 18 months of community custody.[19]

Rehmus argues the "prosecutor breached the plea agreement with his timid support of the exceptional sentence downward" or undermined it by "implicitly expressing [his] unhappiness" with the agreement.[20] The prosecutor's contractual obligation was "to recommend the agreed-upon sentence,"[21] not to do so enthusiastically.[22] He had statutory duties to state "the reasons for the agreement" and, for vehicular homicide, to inform the court whether the victim's representatives "ha[d] expressed any objections to or comments on the nature of and reasons for the plea agreement."[23] The prosecutor's explanation to the court fulfilled both his contractual and statutory obligations.

---

[19] RP (Oct. 5, 2018) at 2-4.

[20] Appellant's Br. at 8.

[21] Talley, 134 Wn.2d at 183.

[22] Carreno-Maldonado, 135 Wn. App. at 83.

[23] RCW 9.94A.431(a); see RCW 9.94A.411 (categorizing vehicular homicide as a "crime against persons").

Rehmus compares this case to <u>State v. Carreno-Maldonado</u>, where the prosecutor recommended a sentence at the low end of the sentencing range and undercut it by reciting unsolicited facts consistent with statutory aggravating factors.[24] In <u>State v. Julian</u>, an offender argued the prosecutor breached the plea agreement by letting defense counsel speak first and argue in the agreement's favor and then, after defense counsel finished, stating, "I don't have an awful lot to add" before recommending the agreed sentence.[25] The court concluded the prosecutor did not breach the plea agreement because "[t]hough hardly made enthusiastically," he made a clear recommendation, "acquiesce[d] in the [special sex offender] sentencing alternative as promised," and did not undermine the agreement.[26]

Here, the prosecutor asked the court to impose "an agreed exceptional sentence [of] 65 months," which is below the standard range.[27] Information about the victim's family's feelings and Rehmus's motion were required by RCW 9.94A.431(1). The prosecutor explained Rehmus's license was suspended only because the court requested that information sua sponte. The prosecutor's fleeting mention of his feelings about the agreement were not required or requested but did not undermine the agreement because, viewed objectively within the entire

---

[24] 135 Wn. App. 77, 84-85, 143 P.3d 343 (2006); <u>see</u> RCW 9.94A.535(2)-(3) (listing aggravating factors).

[25] 102 Wn. App. 296, 302, 304, 9 P.3d 851 (2000).

[26] <u>Id.</u>

[27] RP (Oct. 5, 2018) at 2.

record and consistent with RCW 9.94A.431(1), it provided context for the strength of Rehmus's motion and the victim's family's feelings of disappointment. Unlike Carreno-Maldonado, the additional context was consistent with the agreed sentence and information relevant to it. Like Julian, the prosecutor's unenthusiastic recommendation did not breach the plea agreement.

Rehmus argues two of his conditions of community custody must be stricken. We review conditions of community custody for abuse of discretion.[28]

The court prohibited Rehmus from entering any "place where alcohol is the chief item of sale."[29] Rehmus contends this entry limitation must be stricken because it is not crime related. A condition is crime related where substantial evidence shows a "reasonable relationship" between it and the circumstances of the defendant's crime.[30]

In State v. Parramore, a drug dealer was convicted of selling marijuana, and the trial court imposed a condition of community custody requiring that he submit to a breathalyzer to test for alcohol.[31] This court concluded the condition was not crime related because no evidence linked alcohol use to his delivery of

---

[28] State v. Nguyen, 191 Wn.2d 671, 678, 425 P.3d 847 (2018).

[29] CP at 36.

[30] Nguyen, 191 Wn.2d at 683-84; State v. Irwin, 191 Wn. App. 644, 656, 364 P.3d 830 (2015). "'Substantial evidence exists where there is a sufficient quantity of evidence in the record to persuade a fair-minded, rational person of the truth of the finding.'" State v. Delbosque, 195 Wn.2d 106, 116, 456 P.3d 806 (2020) (quoting State v. Hill, 123 Wn.2d 641, 644, 870 P.2d 313 (1994)).

[31] 53 Wn. App. 527, 528-29, 768 P.2d 530 (1989).

marijuana.[32]  Similarly, in <u>State v. Jones</u>, the court struck a condition requiring that a burglar participate in alcohol counseling when no evidence showed alcohol contributed to his crimes.[33]

Rehmus pleaded guilty to vehicular homicide and admitted he was under the influence of marijuana at the time of the crash.  The crime of vehicular homicide requires proof the driver killed another as a result of operating a motor vehicle while "under the influence of any intoxicating liquor or drug."[34]  The State argues this statutory requirement links the condition to Rehmus's conviction.  But marijuana and alcohol are distinct substances, and consuming alcohol is distinct from entering a business selling alcohol.  No evidence shows alcohol consumption contributed to Rehmus's crime or that he consumed marijuana in a business selling alcohol.  Like <u>Parramore</u> and <u>Jones</u>, no evidence links Rehmus's crime to alcohol use.  Because substantial evidence does not link this condition to Rehmus's conviction, the condition limiting entry is not crime related and must be stricken.

The court also prohibited Rehmus from having any "contact with any persons who are currently manufacturing or delivering controlled substances."[35]

---

[32] <u>Id.</u> at 531.

[33] 118 Wn. App. 199, 207-08, 76 P.3d 258 (2003).

[34] RCW 46.61.520(1)(a).  A person can also be guilty when he kills another by operating a motor vehicle recklessly or with disregard for the safety of others. RCW 46.61.520(1)(b)-(c).

[35] CP at 36.

9

He contends this condition is vague because it would result in arbitrary enforcement.

A community custody condition is unconstitutionally vague when it (1) fails to sufficiently define the conduct it prohibits "so an ordinary person can understand the prohibition" or (2) does not provide "sufficiently ascertainable standards" to protect against arbitrary enforcement.[36] A condition "is not vague when a person 'exercising ordinary common sense can sufficiently understand' it."[37] When a condition limits an offender's First Amendment right of association, the condition must be clear and "'reasonably necessary to accomplish the essential needs of the state and public order.'"[38]

The State admits "the word 'unlawfully' should be included to modify the words 'manufacturing or delivering'" to make this condition "precise."[39] As Rehmus notes, "[c]ontrolled substances find legitimate use in the diagnosis, cure, mitigation, treatment, or prevention of disease in individuals or animals."[40] Rehmus would violate the plain language of this condition by visiting a pharmacy

---

[36] State v. Padilla, 190 Wn.2d 672, 677, 416 P.3d 712 (2018).

[37] Id. at 679-80 (internal quotation marks omitted) (quoting Gibson v. City of Auburn, 50 Wn. App. 661, 667, 748 P.2d 673 (1988)).

[38] In re Pers. Restraint of Brettell, 6 Wn. App. 2d 161, 169, 430 P.3d 677 (2018) (internal quotation marks omitted) (quoting State v. Riley, 121 Wn.2d 37-38, 846 P.2d 1365 (1993)).

[39] Resp't's Br. at 14.

[40] Appellant's Br. at 14 (citing RCW 69.50.101).

or having a nurse administer morphine in a hospital.[41]  Because the condition fails to provide sufficient guidance and invites arbitrary enforcement, it must be stricken as vague unless clarified on remand.[42]

The State concedes remand is required to strike two discretionary legal financial obligations and language mandating interest accrual on his legal financial obligations.  Because the court found Rehmus indigent and RCW 10.82.090(1) no longer authorizes interest accrual on nonrestitution legal financial obligations, we accept the State's concession.

Therefore, we affirm Rehmus's conviction and remand for further proceedings consistent with this opinion.

_____

WE CONCUR:

_____     _____

---

[41] See RCW 69.50.101(g) (defining "controlled substance"); Controlled Substances: Alphabetical Order, U.S. DEP'T OF JUSTICE, DRUG ENFORCEMENT AGENCY, http://www.deadiversion.usdoj.gov/schedules/orangebook/c_cs_alpha.pdf (last visited June 3, 2020) (identifying morphine as a controlled substance).

[42] We note this condition, unlike the condition we upheld in Brettell, 6 Wn. App. 2d at 170-71, does not contain any intent element.